## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| J & M SALES INC., *et al.*, | ) Case No. 18-11801 (LSS) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) Related Docket Nos.: 470 |

## ORDER APPROVING SALE OF CERTAIN
## PURCHASED ASSETS AND GRANTING RELATED RELIEF

Upon consideration of *Debtors' Motion for Orders (I)(A) Authorizing Entry Into Backstop Asset Purchase Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets or (B) Store Closing Sales and (III) Granting Related Relief* [Dkt. 470] (the "Motion");[2] and it appearing that the relief requested is in the best interests of Debtors, their estates, their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion having been given and it appearing that no other notice need be given; and Debtors and Pegasus Trucking, LLC (the "Buyer"), having agreed pursuant to the terms and conditions of that certain Asset Purchase Agreement dated October [__], 2018, a copy of which is attached as **Exhibit A** (as amended, modified or

---

[1]  Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: J & M Sales Inc. (4697); National Stores, Inc. (4874); J&M Sales of Texas, LLC (5979); FP Stores, Inc. (6795); Southern Island Stores, LLC (8099); Southern Island Retail Stores LLC (4237); Caribbean Island Stores, LLC (9301); Pazzo FNB Corp. (9870); Fallas Stores Holdings, Inc. (6052); and Pazzo Management LLC (1924). Debtors' mailing address is 15001 South Figueroa Street, Gardena, CA 90248.

[2] All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Motion or in the Asset Purchase Agreement.

supplemented, and including all exhibits and related agreements, the "Asset Purchase Agreement") for Debtors to sell, transfer and assign, and Buyer to acquire, those certain Purchased Assets (as defined in the Asset Purchase Agreement) (the "Sale"); and the Sale conducted pursuant to the Asset Purchase Agreement having been determined to be the highest and best offer for the Purchased Assets; and a hearing having been held on October 3, 2018, whereupon the Court entered an Order approving bidding procedures [Docket No. 521] (the "Bidding Procedures Order"); and an auction having been held on October 8, 2018, 2018 (the "Auction"), at which time Buyer was determined to have made the highest and best offer for the Purchased Assets; and a hearing having being held on October 11 and 12, 2018 (together the "Sale Hearing") to consider the Motion and the Sale of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon the *Declaration of Marc Bilbao in Support of the Debtors' Motion for Orders (I) (A) Authorizing Entry into Backstop Asset Purchase Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof, (II) Authorizing (A) Sale of Purchased Assets or (B) Store Closing Sales and (III) Granting Related Relief* [Dkt. 470-4] (the "Bilbao Declaration"); and upon the evidence proffered or adduced at the Sale Hearing; and the Court having found and determined that the relief sought in the Motion is in the best interests of Debtors, their estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby **FOUND AND DETERMINED THAT**:[2]

---

[2]  The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and

**A.**     **Jurisdiction:**  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134.  Approval of Debtors' entry into the Asset Purchase Agreement, and the transactions contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

**B.**     **Venue:**  Venue of these cases in this district is proper pursuant to 28 U.S.C. § 1409(a).

**C.**     **Statutory Predicates:**  The statutory predicates for the approval of the Asset Purchase Agreement and transactions contemplated therein are sections 105, 363, 364 and 554 of the Bankruptcy Code 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1.

**D.**     **Notice:**  Proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and in compliance with the Bidding Procedures Order.  No other or further notice is required.

**E.**     **Opportunity to be Heard:**  A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee, (ii) counsel to Debtors' prepetition and postpetition lenders,[3]

---

conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

[3] Prepetition and postpetition lenders are Gordon Brothers Finance Company ("GBFC") as agent, the lenders party thereto from time to time (collectively with GBFC, the "Term Lenders"), Encina Business Credit, LLC, ("Encina") as administrative agent, collateral agent and swing line lender, Israel Discount Bank of New York ("IDB") as co-administrative agent and the lenders (the "Pre-Petition ABL Lenders"), Encina, as administrative agent, collateral

(iii) the Office of the United States Attorney for the District of Delaware, (iv) counsel to the Committee, (v) all parties who are known to assert any lien, claim, interest or encumbrance in or upon any of the Assets, (vi) all lessors of leases for the Stores, (vii) all applicable federal, state, and local taxing authorities (collectively, the "Taxing Authorities"), (viii) all applicable state attorneys general and (ix) all other applicable parties in interest, including all entities on the general case service list as of the date of entry of the Bidding Procedures Order ((i) through (ix) collectively, the "Global Sale Notice Parties"). Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

      **F.**       **Marketing Process:**  As demonstrated by: (i) Bilbao Declaration (ii) the testimony and other evidence proffered or adduced at the Sale Hearing and (iii) the representations of counsel made on the record at the Sale Hearing, Debtors have thoroughly marketed the Purchased Assets and have conducted the bidding solicitation fairly, with adequate opportunity for parties that either expressed an interest in acquiring or liquidating the Purchased Assets, or who Debtors believed may have had an interest in acquiring or liquidating the Purchased Assets, to submit competing bids. Debtors have negotiated and undertaken their role leading to the Sale and entry into the Asset Purchase Agreement in a diligent, non-collusive, fair and good faith manner. Debtors have conducted the marketing and sale process as set forth in and in accordance with the Motion and the Bidding Procedures Order.

      **G.**       **Auction and Multiple Successful Bids**:  On October 8, 2018, Debtors conducted the Auction with respect to the sale of the Assets. At the Auction, Debtors determined the following bids to constitute the Successful Bids and Back-Up Bids, as applicable:  (1) Debtors

---

agent and swing line lender, IDB as co-administrative agent and the lenders (the "DIP Lenders" collectively with the Pre-Petition ABL Lenders the "Senior Lenders," and together with the Term Lenders, the "Lenders").

determined that the bid submitted by Buyer to be the Successful Bid for 85[4] of Debtors' store

locations[5] as a going concern sale for (i) 76% of the aggregate cost value for Merchandise at

such stores as of the closing date of that sale; (ii) $2,500,000 in cash at closing for (a) FF&E at

the 85 locations and corporate headquarters; (b) lease designation rights for Debtors' leases that

are the subject of the Motion (which leases do not include the 74 stores that are the subject of the

GOB Sales Motion [Dkt. 16] ), provided however, that with respect to the lease designation

rights if, through the sale of such leases, subject to those rights and the terms of the Asset

Purchase Agreement, Buyer receives at least $500,000, then any amounts achieved by Buyer in

excess of $500,000 shall be shared with Debtors on an equal (*i.e.*, 50/50) basis; (2) Debtors

determined that the bid (the "Initial Agency Agreement") submitted by a contractual joint

venture of Hilco Merchant Resources, SB360 Capital Partners, and Gordon Brothers Retail

Partners, LLC (the "Agent")[6] to be the Successful Bid for the Merchandise and FF&E at

Debtors' remaining 184 stores as a liquidation bid for (i) 65% of the aggregate cost value for

Merchandise at those stores as of the sale commencement date and (ii) the right to sell, for a 15%

commission of gross proceeds from such sale all FF&E at such stores and the Debtors'

Distribution Centers, all as more particularly set forth in and memorialized in the Agency

Agreement. Debtors also determined that in the event that the Sale does not close by 10:00 a.m.

prevailing Eastern Time on October 19, 2018 (the "Going Concern Closing Deadline"), then they

---

[4] One of the 85 designated leases incorporates both a store location (store #100) and Debtors' corporate office and distribution center, located at 15001 South Figueroa Street, Gardena, CA 90248.  Pursuant to the Initial Agency Agreement, the Agent has the right to sell the Owned FF&E (as defined in the Liquidation Sale Order) located at the portion of this facility that constitutes the Gardena distribution center on a commission basis, provided, however, such Owned FF&E shall not include any personal property of any employee at the Gardena distribution center or any personal property including office furniture, cubicle dividers, clothing racks and the like that has been at the Gardena corporate offices and used by employees since prior to the filing of the Debtors' bankruptcy cases.

[5] By way of clarification, Buyer's Successful Bid included a list of 87 leases concerning 85 stores, with each of store #101 and #102 comprised of 2 legal parcels with different owners, resulting in 2 leases for each of these stores.

[6] The term "Agent" and the terms used in paragraph 19 below, to the extent not otherwise defined, have the meanings given them in the Agency Agreement.

are authorized to enter into the "Backup Agency Agreement" (together with the Initial Agency Agreement, the "Agency Agreements" and the "Agency Transactions"[7]) for the Merchandise and FF&E at Debtors' at 84[8] of the Debtors' remaining stores. The Backup Agency Agreement provides a liquidation bid for (i) 67% of the aggregate cost value for Merchandise at those stores as of the sale commencement date and (ii) the right to sell, for a 15% commission of gross proceeds from such sale, all FF&E at such stores and the Debtors' Corporate Offices and Distribution Centers, all as more particularly set forth in and memorialized by the Backup Agency Agreement.  The Backup Agency Agreement only becomes effective if the Sale fails to close by the Going Concern Closing Deadline.  Further, other conditions precedent to Agent's obligations under the Backup Agency Agreement must be satisfied before the Backup Agency Agreement becomes effective.

H.       **Highest and Best Offer:**  The Asset Purchase Agreement attached as **Exhibit A**, including the form and total consideration to be realized by Debtors pursuant to the Asset Purchase Agreement, (i) is the highest and best offer received by Debtors for the Purchased Assets, (ii) is fair and reasonable, and (iii) is in the best interests of Debtors, their estates, their creditors and all other parties in interest.

I.       **Business Judgment:**  Debtors' decision to enter into and perform their obligations under the Asset Purchase Agreement, is a reasonable exercise of Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of Debtors, their estates, their creditors, and all other parties in interest. Debtors have articulated good and

---

[7] The Agency Transactions were approved by separate order.  *See Order Approving Liquidation Sale of the Debtors' Assets and Granting Related Relief* (D.I. 640) (the "Liquidation Sale Order").
[8] Store Number 387 is excluded from the Backup Agency Agreement.

sufficient reasons for the approval of the Asset Purchase Agreement and the Sale to Buyer pursuant thereto.

**J.    Personally Identifiable Information:**  The transactions contemplated by the Asset Purchase Agreement do not include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or assets containing personally identifiable information).  Such transactions do not require the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) of the Bankruptcy Code.

**K.    Time of the Essence:**  Time is of the essence in effectuating the Asset Purchase Agreement and proceeding with the Sale contemplated therein without interruption.  Based on the record of the Sale Hearing, the Bilbao Declaration, and the other evidence submitted in support of the Motion, and for the reasons stated on the record at the Sale Hearing, the Sale under the Asset Purchase Agreement must be closed as soon as possible following entry of this Order, but in no event later than October 19, 2018.   Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a) and 6004(h), and permit the immediate effectiveness of this Order; provided, however, this waiver does not apply in this Order to the Assumption and Assignment of leases and the Debtors or Buyer may request such waiver in connection with these later hearings.

**L.    Sale Free and Clear:**  A sale of the Purchased Assets other than one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, charges, suits, licenses,

options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic

governmental entity, taxes (including foreign, state and local taxes), licenses, covenants,

restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement,

contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA,

CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the

fullest extent of the law, in each case, of any kind or nature (including, without limitation, all

"claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-

petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or

unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded

or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory,

matured or unmatured, legal or equitable (collectively, the "Encumbrances"),  and without the

protections of this Order would hinder Debtors' ability to obtain the consideration provided for

in the Asset Purchase Agreement and, thus, would impact materially and adversely the value that

Debtors' estates would be able to obtain for the sale of the Purchased Assets. But for the

protections afforded to Buyer under the Bankruptcy Code and this Order, Buyer would not have

offered to pay the consideration contemplated in the Asset Purchase Agreement. In addition,

each entity with an Encumbrance, Interest, Claim or Lien (all as defined in the Asset Purchase

Agreement) upon the Purchased Assets, (i) has consented to the Sale or is deemed to have

consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money

satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the

Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section

363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances,

Interests, Claims or Liens who did not object, or who withdrew their objections, to the Motion

are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Asset Purchase Agreement and the consummation of the Sale free and clear of any and all Encumbrances, Interests, Claims or Liens is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of Debtors' estates, their creditors and other parties in interest. For the avoidance of doubt, the Encumbrances, Interests, Claims and Liens covered under this subparagraph, and as defined in the Asset Purchase Agreement, include any pre-petition secured claims or interests of Michael Fallas, who is the President of Debtors and the principal of the Buyer, Pegasus Trucking, LLC.  Nothing herein shall waive, limit or impair any rights or obligations with respect to the proposed assumption and assignment of leases pursuant to the Asset Purchase Agreement including, without limitation, the 85 Locations constituting the Going Concern Sale or any leases that may be assigned pursuant to the lease designation rights acquired by Buyer.  Notwithstanding anything contained herein to the contrary, to the extent that the provisions of this Order provide for the purchase of licenses of Intellectual Property, Buyer's purchase of such rights are expressly subject to the provisions of paragraph 22 of this Order as it pertains to the usage by the Agent under the Initial Agency Agreement of such Intellectual Property in the conduct of the sale provided for in the Agency Transactions (See Footnote 7, above).

**M.** **Arm's-Length Sale:** The consideration to be paid by Buyer under the Asset Purchase Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable under these

circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding Debtors or their creditors under any applicable laws.

N.        **Good Faith:**  Debtors, their management and their professionals, and Buyer, its members and its officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith. The Asset Purchase Agreement between Buyer and Debtors was negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code. Buyer shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. Debtors were free to deal with any other party interested in buying or selling on behalf of Debtors' estate some or all of the Purchased Assets. Neither Debtors nor Buyer has engaged in any conduct that would cause or permit the Sale, the Asset Purchase Agreement, or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code. Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, Buyer has not acted in a collusive manner with any person and was not controlled by any agreement among bidders. Buyer's prospective performance and payment of amounts owing under the Asset Purchase Agreement are in good faith and for valid business purposes and uses.

O.        **[Reserved]**.

P.        **Security Interests:**  The release of all Liens, Claims, Interests and Encumbrances provided for in the Asset Purchase Agreement and this Order on the Purchased Assets which are the subject of this Order are necessary to induce Buyer to agree to terms for the Asset Purchase Agreement that maximize value for Debtors' estates.  The absence of such protections would

materially and adversely affect the value available to Debtors absent the Sale with Buyer

pursuant to the Asset Purchase Agreement. But for the protections afforded to Buyer under the

Bankruptcy Code, this Order, and the Asset Purchase Agreement, Buyer would not have agreed

to pay Debtors the consideration provided for under the Asset Purchase Agreement. In addition,

the Lenders which hold a security interest in the property to which Buyer is purchasing, have

consented to the Sale provided for in the Asset Purchase Agreement, subject to the satisfaction of

the conditions set forth in the Asset Purchase Agreement and this Order.

**Q.**       **Corporate Authority:**  Subject to the entry of this Order, Debtors (i) have full

corporate or other power to execute, deliver and perform their obligations under the Asset

Purchase Agreement and all other transactions contemplated thereby (including without

limitation, reaching an agreement and resolution regarding the final reconciliation contemplated

by the Asset Purchase Agreement), and entry into the Asset Purchase Agreement has been duly

and validly authorized by all necessary corporate or similar action, (ii) have all of the corporate

or other power and authority necessary to consummate the transactions contemplated by the

Asset Purchase Agreement, and (iii) have taken all actions necessary to authorize and approve

the Asset Purchase Agreement and the transactions contemplated thereby. No consents or

approvals, other than those expressly provided for herein or in the Asset Purchase Agreement,

are required for Debtors to consummate such transactions.

**R.**       **No Successor Liability:**  Except with respect to leases that may be assumed

pursuant to the Asset Purchase Agreement and Order of this court, no sale, transfer or other

disposition of the Purchased Assets pursuant to the Asset Purchase Agreement or entry into the

Asset Purchase Agreement will subject Buyer to any liability for claims, obligations or

Encumbrances asserted against Debtors or Debtors' interests in such Purchased Assets by reason

of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. Buyer is not a successor to Debtors or their respective estates.

**S.**    **No Sub Rosa Plan:**  Entry into the Asset Purchase Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of Debtors' creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for Debtors. Entry into the Asset Purchase Agreement does not constitute a sub rosa chapter 11 plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## Motion Granted, Objections Overruled

1.    The relief requested in the Motion is granted as set forth herein. The foregoing recitals are incorporated here.

2.    Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied, except that issues relating to assumption and assignment of leases to Buyer, including cure and adequate assurance of future performance are reserved for separate consideration and further hearings as set forth in paragraph 5 and nothing in this Order shall be deemed to have overruled objections based upon the proposed assumption and assignment of leases.

## Asset Purchase Agreement Approved and Authorized

3.    The Asset Purchase Agreement is approved pursuant to section 363 of the Bankruptcy Code. Debtors are hereby authorized and empowered to assume the Asset Purchase

Agreement pursuant to sections 363(b) and 365(a) of the Bankruptcy Code. The Asset Purchase

Agreement (and each of the transactions contemplated therein (including without limitation,

reaching an agreement and resolution regarding the final reconciliation contemplated by the

Asset Purchase Agreement, which agreement and resolution shall be binding on all parties

(including (without limitation) Debtors, the Committee, the Co-Administrative Agents, any

successor chapter 7 or chapter 11 trustee, and all other parties in interest) without further order of

the Court)) is hereby approved in its entirety and is incorporated herein by reference. The failure

to include specifically any particular provision of the Asset Purchase Agreement in this Order

shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court

that the Asset Purchase Agreement and all of its provisions, payments and transactions, be

authorized and approved in their entirety. Likewise, all of the provisions of this Order are non-

severable and mutually dependent.  This does not apply to any rights of landlords of non-

residential leases of real property to object to the assumption and assignment of their leases to

the Buyer or to any third party pursuant to the designation rights agreement.

4.      Buyer's Lease Designation Rights may be exercised from time to time as

expressly provided for under the terms of the Asset Purchase Agreement.

5.      Buyer's assumption of leases and executory contracts shall be the subject

of one or more separate orders and hearings concerning same shall be held on October 17, 2018

at 10:00 a.m. and October 18, 2018 at 11:00 a.m. Buyer shall give notice of any Specified Lease

that Buyer intends to add or delete from the list of Specified Leases (as set forth in Schedule

2.1(a) of the Asset Purchase Agreement) no later than Monday, October 15, 2018 at 4:00 p.m.,

Pacific Time. Buyer's right to add leases to the list of Specified Leases is subject to the rights of

the Agent to occupy the said premises and sell Merchandise and Owned FF&E (as defined in the

Liquidation Sale Order) at such premises under the terms of the Initial Agency Agreement unless otherwise agreed to in writing by Agent and Buyer, in each party's sole discretion.

6.      Notwithstanding anything contained herein, the APA or any other documents, this Order shall not constitute approval of the assumption and assignment of (i) that certain License and Services Agreement dated June 1, 2017 (the "Services Agreement") between Tender Retail, a Division of ACCEO Solutions, Inc. "Tender") and certain of the Debtors, or (ii) among Enterprise Car Leasing ("Enterprise") and certain Debtors under that certain Master Equity Lease dated as of August 31, 2010 ("Rental Agreement"). All rights of Tender and Enterprise to object to assumption and assignment of the Services Agreement and Rental Agreement are hereby preserved and may only be addressed after notice and an opportunity for hearing. Debtors shall not be permitted to transfer the Services Agreement, the Rental Agreement or any of the intellectual property associated with the Services Agreement or Rental Agreement to the Buyer, absent written agreement of Tender and Enterprise or further court order, after notice and an opportunity for hearing.

7.      All amounts payable to Buyer under the Asset Purchase Agreement shall be payable to Buyer without the need for any application of Buyer therefor or any further order of the Court

8.      The transfer of Transferred Employees and any Purchased Assets related to Central Services (as defined in the Initial Agency Agreement) to the Buyer is subject to the Buyer providing those Central Services and making Transferred Employees available to the Agent pursuant to the terms and conditions of the Initial Agency Agreement.

9.      All Merchandise and Owned FF&E (as defined in the Liquidation Sale Order) subject to the Initial Agency Agreement are "Excluded Assets" as that term is defined in

the Asset Purchase Agreement.  The Buyer will cooperate with the Agent with respect to the Sale under the Initial Agency Agreement and Liquidation Sale Order, and the Buyer will not, directly or indirectly, interfere with, impede or restrict the conduct of the Sale under the Initial Agency Agreement and Liquidation Sale Order.  The Agent will cooperate with the Buyer with respect to the Sale under the Asset Purchase Agreement and this Order, and the Agent will not, directly or indirectly, interfere with, impede or restrict the conduct of the Sale under the Asset Purchase Agreement and this Order.

10.    Subject to the provisions of this Order, Debtors and Buyer are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct and close the Sale in accordance with the Asset Purchase Agreement.

11.    Pursuant to section 363(b) of the Bankruptcy Code, Debtors, Buyer and each of their respective officers, employees and agents are hereby authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Asset Purchase Agreement and each of the transactions and related actions contemplated or set forth therein. Debtors and/or such other person(s) as are expressly designated to act on Debtors' behalf, are specifically authorized to act on behalf of Debtors in connection with the Sale and, except as provide herein, no other consents or approvals are necessary or required for Debtors to carry out the Sale, effectuate the Asset Purchase Agreement and each of the transactions and related actions contemplated or set forth therein; except with respect to further proceedings regarding the assumption and assignment of leases are not subject to the provisions in this paragraph regarding consent or approval.

**Order Binding**

12.     This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets.

13.     This Order and the terms and provisions of the Asset Purchase Agreement shall be binding on all of Debtors' creditors (whether known or unknown), Debtors, Buyer, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Purchased Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Order and the terms and provisions of the Asset Purchase Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of Debtors or converting Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Asset Purchase Agreement, as well as the rights and interests granted pursuant to this Order and the Asset Purchase Agreement, shall continue in these or any superseding cases and shall be binding upon Debtors, Buyer and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee

appointed in this case shall be and hereby is authorized to operate the business of Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Asset Purchase Agreement, and Buyer and the trustee shall be and hereby are authorized to perform under the Asset Purchase Agreement upon the appointment of the trustee without the need for further order of this Court. Notwithstanding anything to the contrary, the rights of parties with respect to leases to be assumed or assigned pursuant to the Asset Purchase Agreement shall not be impaired by this Paragraph 13.

**<u>Good Faith</u>**

14.     Entry into the Asset Purchase Agreement is undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Buyer shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed, or modified on appeal or vacated by the Court pursuant to a subsequent order or by another court. The reversal or modification on appeal of the authorization provided herein to assume the Asset Purchase Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal. Buyer is entitled to all of the benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code and no appeal, modification, amendment or waiver shall affect the validity and enforceability of the sale or the liens or priority authorized or created under the Asset Purchase Agreement and this Order. The transactions contemplated by the Asset Purchase Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

**<u>Closing of the Sale</u>**

15.     Except as otherwise provided in the Asset Purchase Agreement or with respect to obligations under leases to be assumed under the Asset Purchase Agreement, and subject to the terms thereof, pursuant to section 363(f) of the Bankruptcy Code, Buyer shall be authorized to acquire the Purchased Assets free and clear of any and all Encumbrances, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of the Secured Lenders whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, with any presently existing liens encumbering all or any portion of the Purchased Assets attaching only to the Proceeds, with the same validity, priority, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.

16.     If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Purchased Assets shall not have delivered to Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Purchased Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and Debtors and Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and Buyer is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and related transactions.

17.    Subject to the closing of the Sale, all entities that are presently in possession of some or all of the Purchased Assets or other property in which Debtors hold an interest that are subject to the Asset Purchase Agreement hereby are directed to surrender possession of such Purchased Assets or other property to Buyer.  Nothing in this Order shall affect the liens on the Agent Collateral granted to the Agent in the Liquidation Sale Order. Nothing in this paragraph shall affect the receipt by Buyer of the Purchased Assets which it is purchasing under this Order and the Asset Purchase Agreement.

18.    Debtors and Buyer shall not extend the Going Concern Closing Deadline past October 19, 2018, unless extended by mutual written agreement of Debtors and Buyer, and subject to the prior written consent of the Term Lenders and the Committee, in their sole discretion.  In the event that the Sale does not close on or prior to October 19, 2018, the Asset Purchase Agreement shall terminate subject to the extension of such deadline as identified above, without any further action by the parties, and the Backup Agency Agreement may become effective (subject to the satisfaction of all of its conditions precedent) and Debtors and the Agent shall be authorized (by the Liquidation Sale Order) to enter and close the transactions contemplated thereby.  If the Agent is not notified by 12:30 p.m. (ET) on October 19, 2018 that the Asset Purchase Agreement has failed to close, then the Backup Agency Agreement may not become effective, unless the Agent waives such condition precedent in its sole discretion.  In the event the Backup Agency Agreement shall become effective, Debtors shall promptly provide notice to affected landlords

19.    Except to the extent of the reserved rights of governmental units expressly granted elsewhere in this Order, Debtors and Buyer are hereby authorized to take such actions as may be necessary and appropriate to implement the Asset Purchase Agreement and to conduct

the Sale without necessity of further order of this Court as provided in the Asset Purchase

Agreement.

20.     Except as expressly provided for herein, no person or entity, including but

not limited to any landlord, licensor, utilities, creditors and other interested parties and all

persons acting for or on their behalf shall interfere with or otherwise impede the closing of the

Sale, or institute any action in any court (other than in the Bankruptcy Court) with respect to the

Purchased Assets or before any administrative body which in any way directly or indirectly

interferes with or obstructs or impedes the closing of the Sale, and all such parties and persons of

every nature and description, including landlords, licensors, creditors and utility companies and

all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in

any way with, or otherwise impeding, the closing of the Sale and/or (ii) instituting any action or

proceeding in any court or administrative body seeking an order or judgment against, among

others, Debtors, Buyer, or the landlords at Debtors' stores that might in any way directly or

indirectly obstruct or otherwise interfere with or adversely affect the closing of the Sale or seek

to recover damages for breach(es) of covenants or provisions in any lease, sublease or license

based upon any relief authorized herein.

21.     Except as expressly provided for in the Asset Purchase Agreement,

nothing in this Order or the Asset Purchase Agreement, and none of Buyer's actions taken in

respect of the Sale shall be deemed to constitute an assumption by Buyer of any of Debtors'

obligations relating to any of Debtors' employees. Moreover, Buyer shall not become liable

under any collective bargaining or employment agreement or be deemed a joint or successor

employer with respect to such employees.

22.     Pursuant to the Initial Agency Agreement, and subject to the provisions hereof,

Agent shall have the reasonable right to use all customer lists, mailing lists, email lists, and web

and social networking sites (including Facebook, Instagram, Twitter, Snapchat, and Pinterest)

currently utilized by the Debtors in connection with their business, notwithstanding any such

assets being included as "Purchased Assets" under the Asset Purchase Agreement or the closing

thereunder having occurred.  Agent shall use such assets solely during the Sale Term and solely

in connection with the Sale (as defined in the Liquidation Sale Order) it is conducting pursuant to

the Initial Agency Agreement and pursuant to such reasonable restrictions requested by the

Buyer in order for Buyer to comply with the Debtors' currently existing privacy policy and

applicable laws governing the use and dissemination of confidential consumer personal data and

such other restrictions as to use and dissemination as consistent with applicable laws.  Subject to

the provisions hereof, in connection with such use, Agent shall have the right to determine the

content and timing of such communications and posts and to include, from time to time, sale

related advertising, coupons, and information.  Neither Agent or Buyer shall use, during the Sale

Term, such lists or sites in any manner inconsistent with the foregoing, and Agent (and its

affiliates), and Buyer (and its affiliates) will, during the Sale Term, only publicly advertise their

respective business in a manner consistent with Buyer's ongoing business at the Specified Leases

or with the Sale (as defined in the Initial Agency Agreement), as the case may be, and use good

faith commercially reasonable efforts to avoid confusion as to the other party's efforts and

undertakings.

## Other Provisions

23.     Except as expressly provided in the Asset Purchase Agreement or any

order approving the assumption and assignment of leases thereunder, Buyer shall not be liable

for any claims against Debtors, and Debtors shall not be liable for any claims against Buyer. Buyer shall have no successor liability whatsoever with respect to any Encumbrances, Liens, Interests or Claims of any nature that may exist against Debtors. Buyer shall not be, or to be deemed to be: (a) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories; or (b) a joint employer, co-employer or successor employer with Debtors, and Buyer shall have no obligation to pay Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Asset Purchase Agreement.

24.    Buyer is a party in interest and shall be entitled to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures contemplated herein, any issues related to or otherwise connected to the Sale, and the Asset Purchase Agreement.

25.    Nothing contained in any plan confirmed in Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in this chapter 11 cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or the terms of this Order.

26.     Nothing in this Order shall affect the rights granted to the Agent pursuant to the Liquidation Sale Order and the Initial Agency Agreement.  Nothing in the Liquidation Sale Order shall affect the rights of the Buyer under this Order and the Asset Purchase Agreement.

27.     For the avoidance of doubt, nothing herein or in the Asset Purchase Agreement shall release Michael Fallas or any of his affiliates from any claims or causes action arising from conduct occurring prior to the Petition Date.

28.     The Asset Purchase Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that the Committee and Term Lenders consent, which consent shall not be unreasonably withheld or delayed; provided, however, that any amendment that affects the Agency Transactions shall be consented to by the Agent in writing.  If such consent is withheld by the Committee, the Term Lenders or the Agent, Buyer may, after providing notice to the Committee, Term Lenders and Agent, proceed before this Court on an emergency or shortened time basis to obtain approval for such modification.

29.     This Court shall retain exclusive jurisdiction, including but not limited to the proceedings identified in paragraph 5 of this Order, with regard to all issues or disputes relating to this Order or the Asset Purchase Agreement, including, but not limited to, (a) any claim of Debtors, the landlords and/or Buyer for protection from interference with the Sale, (b) any other disputes related to the Sale, and (c) to protect Debtors and/or Buyer against any assertions of Encumbrances. No such parties or person shall take any action against Debtors, Buyer, the landlords or the Sale until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

30.    Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, Debtors and Buyer are free to perform under the Asset Purchase Agreement at any time, subject to the terms of the Asset Purchase Agreement. For the avoidance of doubt, Debtors are not subject to any stay in the implementation of the transactions contemplated by the Asset Purchase Agreement.

31.    If the Sale closes, Retail Consulting Services, Inc. d/b/a RCS Real Estate Advisors ("RCS"), previously retained by Debtors pursuant to order dated September 20, 2018, and notwithstanding anything to the contrary in such order, is authorized to assist Buyer, including without limitation in connection with the negotiation or renegotiation of lease terms and the further disposition of the leases and other assets that are the subject of the Sale, at Buyer's sole cost and expense, in any manner agreed to between RCS and Buyer, all without need of further application to or order of this Court. For the avoidance of doubt, RCS shall not be entitled to any compensation from Debtors or their estates for any services provided by RCS to Buyer after any closing of the Sale.

32.    To the extent that anything contained in this Order explicitly conflicts with a provision in the Asset Purchase Agreement, this Order shall govern and control.

**Dated: October 17th, 2018**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**