**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>J & M SALES, INC., *et al.*[1]<br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-11801 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: November 19, 2018 at 2:00 p.m. (ET)** |

**STATUS REPORT OF PEGASUS TRUCKING, LLC REGARDING FUNDS
HELD BY PRIORITY PROCESSING SERVICES, INC. AND
SWIPE PAYMENT SOLUTIONS, INC.**

Pegasus Trucking, LLC ("Pegasus"), hereby files this status report regarding the issues considered by the Court at the hearing which took place on November 16, 2018 and which was continued for a Status Conference on November 19, 2018 at 2:00 p.m.

### INTRODUCTION[2]

This status report follows the discovery last week by Pegasus that from October 24, 2018 through at least November 12, 2018, Priority Payment Systems, Inc. and Swipe Payments Solutions, Inc. ("Processors" or "PPS" and "Swipe") withheld $2.7 million of credit card proceeds ("Withheld Proceeds") constituting **all of the sales proceeds obtained by credit card sales** of the stores that Pegasus purchased from the Debtors for more than $25 million, which sale closed on

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: J & M Sales Inc. (4697); National Stores, Inc. (4874); J & M Sales of Texas, LLC (5979); FP Stores, Inc. (6795); Southern Island Stores, LLC (8099); Southern Island Retail Stores LLC (4237); Caribbean Island Stores, LLC (9301); Pazzo FNB Corp. (9870); Fallas Stores Holdings, Inc. (6052); and Pazzo Management LLC (1924). The location of the Debtors' service address is 15001 South Figueroa Street, Gardena, California 90248.

[2] As this Court suggested at the November 16 Hearing, Pegasus has submitted the materials and applications needed in order to work within the Processors' credit card processing system from the date of the sale closing under December 31, 2018. Businesspeople employed by Pegasus worked the weekend starting on November 16 in order to bring this about. While this is described in more detail below, Pegasus has submitted the applications that the Processors have required and they are pending as of the preparation of this status report. It is believed that there will be further events regarding these processing applications during the morning of November 19 prior to the hearing before this Court. However, either the entirety or a very significant portion of the Withheld Proceeds must be released to Pegasus at the conclusion of the November 19 hearing or Pegasus, without doubt, will suffer immediate and irreparable harm.

10021067v2

October 19, 2018. Through the date of this filing, not a single dollar of these proceeds has been remitted to the Debtors (which, in turn, would owe some or all of it to Pegasus). Nor were Pegasus or Debtors given any meaningful notice of these actions notwithstanding that Processors filed papers on October 25 directly addressing their purported concerns about Debtors' continuing to operate under the existing processing agreements to continue process through the Debtors' credit card machines in the Pegasus stores.

The Withheld Proceeds over the approximately thirteen days period that this took place average $150,000 per day. Between November 12 and the day of the Status Conference, seven more days passed. At the same $150,000 per day rate, this equals another $1,050,000, which brings the estimated total of withheld funds to approximately $3.8 Million.

Processors have no legitimate basis for continuing to withhold and take additional Withheld Proceeds. Indeed, as Debtors have stated, Processors doing so violates the automatic stay. Nothing has changed in the mechanics of the credit card processing, and Processors have no legitimate basis for their purported concerns about new or additional risks. Pegasus has expeditiously submitted the applications required by PPS (although it continues to believe such applications were not necessary) and awaits their approval and confirmation of the prompt release of the Withheld Proceeds. Nonetheless, and to the extent such confirmation is not received prior to the November 19 Hearing, Pegasus respectfully requests that the Court order the Withheld Proceeds be turned over to the *Debtors* immediately, so that the Debtors can process these funds under the Transition Services Agreement ("TSA") in the normal course of business.

**FACTUAL BACKGROUND[3]**

1. The Debtors filed their Bankruptcy Case on or about August 6, 2018. Owing to difficulty in accessing necessary inventory and other financial reversals, by the end of September, 2018, the Debtors had suffered a decline in the value of their inventory collateral such that it was necessary, pursuant to the terms of the debtor-in-possession financing put in place for Debtors' cases, to immediately sell the businesses of Debtors.

2. Accordingly, starting on September 27, 2018, a frenetic process that normally takes a period of months to complete, started forward. Instead of marketing the assets of the Debtors and giving prospective buyers a reasonable opportunity to bid and close a sale transaction, sale proposals were submitted by October 4, 2018 (7 days after the September 27 initiation date) and an auction took place at the Wilmington, Delaware Offices of Debtors' counsel on October 8, 2018. The bidding at this auction took all day, and eventually two successful bidders emerged. A "liquidation" bidder including a combination of Hilco/Gordon Bros./360 Capital Partners ("Hilco Sale") for approximately 185 of the Debtors' remaining stores and Pegasus Trucking, LLC for approximately 84 of the Debtors' stores.

3. A hearing on approval of the sale transactions to Hilco and Pegasus took place on October 12, 2018. Numerous parties holding executory contracts came forward at the sale. They came forward in response to concerns about how their executory contracts and unexpired leases of non-residential real property were going to be treated in the Bankruptcy Cases and in connection

---

[3] Pegasus submits that, while in retrospect, an opportunity for all parties to have a chance to review the TSA would have been best, that failing, which resulted from the compressed time frame and circumstances of the sale and deadline for closing, still cannot excuse the behavior of Processors. As discussed below, Processors were well aware of the sale and even attended the hearing on October 17 by telephone. As Debtors continued processing for all of the stores after the announced closing on October 19 in the same manner as before the sale. Processors knew immediately that the processing was continuing and, to the extent they had any legitimate concerns could have come to the Court and raised them immediately rather than silently engaging in self-help (which they did not even disclose when they came to seek relief before the Court) and withholding the Withheld Proceeds.

3

with the liquidation sales that were being conducted. The Hilco Sale was approved by the Court on October 12. Subsequently, on October 17, the Court approved the sale to Pegasus and the Assumption and Assignment of Executory Contracts to Pegasus. Again, at these hearings, and outside of these hearings, inquiries were received by Pegasus from personal property executory contract non-Debtors such as Enterprise Car Leasing and a significant software provider. Pegasus has negotiated with these parties and others regarding whether Pegasus would be taking their contracts by assignment or not. However, although PPS and Swipe had notice of the sales, and an opportunity to inquire or object as to how their executory contracts were being treated, and even attended the hearings on at least September 27th and October 17th, the Processors did nothing, choosing instead to engage in self-help.

4. <u>Approval of the Sale to Pegasus:</u> On October 17 and 18, the Court approved the sale to Pegasus (the "Sale Order") and the assumption and assignment of certain leases (the "Assumption and Assignment Order") [Docket Nos. 670 & 675, respectively]. The evidence submitted in support of the Sale Order and the Assumption and Assignment Order overwhelmingly demonstrated, among other things, that:

    a.    The sale to Pegasus was a going concern sale and was the only going concern sale of assets in these bankruptcy cases as the balance of the assets were to be liquidated under the Hilco Sale.

    b.    The sale to Pegasus promised to keep 2,200 employees working many of them from the communities where the individual going concern stores were located.

    c.    The stores that were in the going concern sale to Pegasus were important to the communities where each store was located as a source of the products that the stores sell.

  d. The sale was for a good price that provided value to the bankruptcy estates that exceeded, on a store for store basis, the value that was being obtained through the Hilco Sale.

## TRANSITION SERVICES AGREEMENT

  5. <u>Transition Services Agreement ("TSA")</u>: The time frames that accompanied the sale to Pegasus were very compressed. Pegasus had no opportunity to:

  a. Establish payroll accounts or a payroll system. Therefore, they not only lacked these business essentials, but they could not hire the employees at the stores and the corporate offices under their own name. Instead, Pegasus is using the Debtors' payroll system to pay employees. The Debtors are keeping those employees on their payroll and as their employees, with Pegasus advancing to the Debtors the funds needed each pay period to cover these expenses—without release of the Withheld Proceeds, continued advancing of these critical funds may become impossible.

  b. Pegasus did not have the time to set up its own merchant banking system. Instead, Pegasus is doing its merchant banking through the Debtors' merchant banking process and relies upon the Debtors' postpetition cash management system. Credit card processing has continued since the completion of the Pegasus sale through the Debtors exactly as the Debtors have done it since the bankruptcy cases were filed—Debtors' employees, Debtors' machines, Debtors' bank accounts. The only change was the new withholding of funds by Processors without meaningful notice to any party or to this Court.

  c. Much of the sales at the stores are on a cash basis. This cash is susceptible to theft. To mitigate the risk of theft, cash is put in special safes ("Smart Safe System") and immediate credit for it is given to the Debtors. Pegasus has been using this system since the sale closed.

5

6. Pegasus' asset based lender is aware of the TSA and understands that Pegasus relies upon Debtors during the transition period. Pegasus' lender is concerned by these proceedings as the Withheld Proceeds constitute the collateral of this lender. From Pegasus' standpoint, PPS and Swipe are guilty of converting Pegasus' property, and the collateral of Pegasus' asset based lender.

7. Pegasus has relied upon the fact that all of the services promised to it would be provided by the Debtors. Pegasus has relied upon the TSA and has been stunned to learn of what the Processors have done without disclosure to the Court, particularly since PPS attended the October 17 hearing.. At the inception of their business that hopes to be a Phoenix from the ashes of the Debtors' companies, when cash could not be more precious, and immediately before Thanksgiving week, the most significant shopping week of the entire year, Pegasus now finds that:

    a. It has **no proceeds** from credit card sales since October 24, almost one month;

    b. It has no borrowing availability with its lender to meet its normal course operations because of this deprivation of its operating capital;

    c. It has no borrowing availability to purchase inventory in order to stock its stores with the merchandise needed to meet the demands of the Christmas season;

    d. It may not be able to pay Debtors, in advance, for the costs and services that the Debtors are providing under the TSA. This would mean that Pegasus would no longer receive the cash management services that the Debtors are providing and would no longer pay Pegasus' payroll in this regard.

    e. Pegasus' continued ability to operate, to support the 85-90 stores that it has bought, and to employ the 2,200 individuals who work at their stores and the additional corporate employees already is in great danger because of Processors' withholdings. The continued ability

of the stores themselves to remain open under these circumstances is directly endangered, bringing up the prospect of losses to the communities that they serve if they cannot remain viable.

This cannot be permitted to continue.

### SUPPLEMENTAL DECLARATION OF SEAN HOAR

8.     Contemporaneously herewith, Pegasus has submitted the *Supplemental Declaration of Sean Hoar* as a separate document in connection with the November 19 hearing. This declaration establishes that the issue which the Processors attempt to create regarding PCI compliance is not true. Currently, the Debtors and Pegasus operating through the Debtors' systems under the TSA are PCI DSS compliant. And, Mr. Hoar makes clear that by January 31, point to point encryption must be established, so compliance is not for an unlimited time into the future. However, in the meantime, serious and irreparable harm is being suffered by the Debtors and Pegasus due to the Processors' conduct in this proceeding.

### ACTUAL AND DEMONSTRABLE FINANCIAL HARM THAT PEGASUS IS AND WILL CONTINUE TO SUFFER UNLESS THE COURT INTERVENES

9.     Absent the release of the Withheld Proceeds, Pegasus faces the real and actual prospect to going out of business. Pegasus is a stranger to the automatic stay dispute between the Debtors and the Processors. Pegasus does not process any credit cards and cannot discern any meaningful difference between it and Hilco, the liquidator responsible for the approximately 270 stores that Pegasus did not purchase. Yet, Pegasus is being put in great peril and is apparently being perceived by Processors, and perhaps this Court, as a threat to Processors.

10.     Pegasus respectfully submits that the positions that the Processors are advocating introduces uncertainty and undermines the predictability that buyers and debtors (here, Pegasus and Debtors) must be able to rely upon when engaging in significant transactions under difficult circumstances.

**SUBMISSION OF THE NEW APPLICATIONS TO THE PROCESSORS BY PEGASUS**

11. As urged by this Court, Pegasus has worked the weekend to prepare and submit the Applications for its own credit card processing arrangement with the Processors. Pegasus does not waive any of its rights under the TSA, the Asset Purchase Agreement and the Bankruptcy Code which the Debtors are also seeking to enforce in their action(s) against the Processors.

12. As a result of its considerable efforts and help and guidance from the Processors, after working the entire weekend from November 16-November 18, the applications are now submitted. Pegasus awaits a response from the Processors and hopes that there is good news to report at the November 19 hearing. However, if there is not, then Pegasus must seek a ruling from this Court. Pegasus respectfully submits that if this Court does not promptly order the return to Debtors of the Withheld Proceeds, Pegasus certainly will lose its borrowing availability and its ability to stock its stores in advance of the Thanksgiving weekend, the most important shopping weekend of the year. Likely, Pegasus will lose its business.

**CERTAIN ARGUMENTS MADE BY THE PROCESSORS ARE EITHER UNTRUE OR DO NOT WITHSTAND SCRUTINY**

13. <u>The Transmission of the October 26 letter to Pegasus</u>: Notwithstanding the statements of counsel for the Processors at the November 16 hearing, **Pegasus never received the October 26 letter the Processors raised with this Court**. Unfortunately, Processors do not appear to have followed up the letter, and, it appears, never sent it to Debtors or counsel for Pegasus. There is no innocent explanation for this conduct. Processors should not get to deprive Pegasus and Debtors of their respective property and contractual rights on this basis in violation of the automatic stay.

14. <u>Now That the Applications Have Been Submitted, they will be Quickly Processed and Approved</u>: At the November 16 hearings, counsel for the Processors said that once the

Applications were submitted, they would be quickly considered and approved. Unless the Processors' counsel can guarantee this Court that: (a) normal processing will start not later than November 21, 2018, and (b) that the Withheld Proceeds will be immediately remitted, then Pegasus must request this Court to rule promptly in its favor.

15. <u>The Regulators Are Responsible:</u>  Recently, the Processors suggested that PPS is a regulated institution. According to Processors, the freezing of the funds over the past month and failing to run these funds through the Debtors' cash management system is required by Treasury Regulations. This is just another post-facto attempt by Processors to find new excuses for their conduct and sow chaos and confusion in an effort to create factual issues where none exist. This is precisely the reason that before taking its actions in secret, the automatic stay required them to first come to this Court and present their bases for withholding funds or stopping processing so that any factual legal or issues could be vetted and parties rights determined. It is quite telling that this is the first that any party, including the Court, is hearing about this serious "regulatory concern" notwithstanding the briefing that has already occurred on the issue of the continued processing by Debtors for the benefit of Pegasus or that even the October 26 letter purportedly sent to Pegasus does not raise this concern. Of course, counsel to the Processors did not mention this issue before or during the hearing on November 16th. In any event, Processors are not free to violate the automatic stay on the pretext of regulatory requirements.

**RELIEF REQUESTED**

16. Pegasus respectfully urges the Court to immediately order the release of the (possibly up to) $3.8 Million that the Processors are holding. Processors have no legal basis for withholding funds. Among all of the interested parties, Processors are the only ones with no

legitimate claim to the Withheld Proceeds. Pegasus has done as the Court requested and submitted applications to the Processors over two very long days of work from November 16-18.

## CONCLUSION

WHEREFORE, Pegasus respectfully requests that the Court grant it the relief requested in this Memorandum and grant such additional relief this Court deems just and appropriate.

Dated: November 19, 2018  
       Wilmington, Delaware

Respectfully submitted

By: */s/ Christopher M. Samis*  
Christopher M. Samis (DE No. 4909)  
L. Katherine Good (DE No. 5101)  
Aaron H. Stulman (DE No. 5807)  
**WHITEFORD, TAYLOR & PRESTON LLC**  
The Renaissance Centre  
405 North King Street, Suite 500  
Wilmington, Delaware 19801  
Telephone: (302) 353-4144  
Facsimile: (302) 661-7950  
Email: csamis@wtplaw.com  
      kgood@wtplaw.com  
      astulman@wtplaw.com

*-and-*

Victor A. Sahn (CA No. 97299)  
David S. Kupetz (CA No. 125062)  
Mark S. Horoupian (CA No. 175373)  
Daniel A. Lev (CA No. 129622)  
Jeffrey M. Pomerance (CA No. 159037)  
**SULMEYERKUPETZ, A.P.C.**  
333 South Hope Street, 35th Floor  
Los Angeles, CA 90071-1406  
Telephone: (213) 626-2311  
Facsimile: (213) 629-4520  
Email: vsahn@sulmeyerlaw.com  
      dkupetz@sulmeyerlaw.com  
      mhoroupian@sulmeyerlaw.com  
      dlev@sulmeyerlaw.com  
      jpomerance@sulmeyerlaw.com

*Counsel for Pegasus Trucking, LLC*

10021067v2