# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>J&M SALES INC., *et al.*,<br><br>          Debtors[1] | Chapter 11<br><br>Case No. 18-11801 (LSS)<br><br>Jointly Administered<br><br>**Re: Doc. Nos. 710, 719** |

**CORRECTED STIPULATED ORDER RE: RESOLUTION OF DISPUTES BETWEEN DEBTORS AND PRIORITY PAYMENT SYSTEMS/SWIPE PAYMENT SOLUTIONS**

This matter coming before the Court on (i) Debtors' *Motion for Entry of Order Awarding Damages for Willful Violations of the Automatic Stay* (the "Stay Violation Motion") [Dkt. No. 710], (ii) *Priority Payment Systems' ("Processor") and Swipe Payment Solutions' ("Swipe", and collectively with Processor, the "Processors") Motion for (I) Order Determining that Automatic Stay Does Not Apply, or in the Alternative, for Relief from the Automatic Stay, (II) Adequate Protection, and (III) Order Compelling Debtors to Assume or Reject Merchant Processing Agreement* (the "Processors' Motion") [Dkt No. 719], and (iii) *Debtors' Motion Pursuant To Sections 105(A) and 363(B) Of The Bankruptcy Code And Bankruptcy Rule 9019 For An Order Approving Settlement Agreement With Priority Payment Systems And Swipe Payment Solutions* (the "9019 Motion", and collectively with the Stay Violation Motion and the Processors' Motion, the "Motions"); and the Court having reviewed the Motions, and having considered the statements of counsel and the evidence adduced with respect to the Motions at hearings and/or status conferences before the Court, including a hearing on the 9019 Motion on

---

[1] The Debtors in the above-captioned chapter 11 cases ("Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: J & M Sales Inc. (4697); National Stores, Inc. (4874); J & M Sales of Texas, LLC (5979); FP Stores, Inc. (6795); Southern Island Stores, LLC (8099); Southern Island Retail Stores LLC (4237); Caribbean Island Stores, LLC (9301); Pazzo FNB Corp. (9870); Fallas Stores Holdings, Inc. (6052); and Pazzo Management LLC (1924). The location of the Debtors' service address is 15001 South Figueroa Street, Gardena, California 90248.

December 20, 2018; and the Court having considered any objections to the 9019 Motion; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motions and the hearings thereon, including the hearing on the 9019 Motion, was sufficient under the circumstances; and Debtors, Processor, and Swipe having agreed to the terms of this Order; and any objections to the 9019 Motion having been withdrawn or ruled upon below,

THE COURT MAKES THE FOLLOWING FINDINGS:

A. On or about March 14, 2014, certain Debtors and Processor entered into certain Merchant Application and Processing Agreements (collectively, the "MPA"). Pursuant to the MPA, Processor provided and continues to provide credit and debit card processing services to Debtors. The current sponsoring bank under the MPA is Citizens Bank (the "Sponsor Bank").

B. On or about December 22, 2017, Debtors learned of an apparent data breach of Debtors' credit and debit card processing systems (the "Data Breach") that occurred earlier in the year, in which consumer data of certain of Debtors' credit and debit card customers may have been compromised.

C. Processors allege that, as a result of the Data Breach, Processor was authorized under Sections 19.1, 19.2 and 19.3 of the MPA to implement and did implement a reserve to cover any damages resulting from the Data Breach that Debtors would be unable to pay, the liability for which may ultimately fall on Processors if Debtors are unable to fulfill their obligations under the MPA (the "Breach Reserve"). Prior to August 6, 2018 (the "Petition Date"), Processor reserved $2,467,334.97 from Debtors' credit and debit card sales by accumulating such amount into the Breach Reserve. After the Petition Date through August 15, 2018, Processor reserved an additional $1,244,287.31 by accumulating such additional amount into the Breach Reserve, for a total of $3,711,622.28.

D. On the Petition Date, Debtors filed chapter 11 bankruptcy in this Court (the "Bankruptcy Cases").

E. By Order dated October 17, 2018, Debtors sold to Pegasus Trucking, LLC ("Pegasus") in a going-concern sale certain of Debtors' store locations (as of the date of such sale, which was October 19, 2018, the "Pegasus Locations"). Between October 24, 2018 and November 24, 2018, Debtors allege that Processor accumulated in a reserve (the "Pegasus Reserve") 100% of the proceeds of credit and debit card sales (less certain fees payable or reimbursable to Processors) by Pegasus at the Pegasus Locations and at Store 688.

F. Debtors filed the *Supplement to Motion for Entry of an Order Awarding Damages for Willful Violations of Automatic Stay Concerning Additional Current Violation of Automatic Stay* (the "Supplement") [Dkt. No. 819] with respect to the Pegasus Reserve, and Pegasus made an informal request for relief as to the Pegasus Reserve (the "Pegasus Request"). By that certain Stipulated Order Re: Credit and Debit Card Processing entered by the Court on November 23, 2018 (the "Pegasus Order") [Dkt. No. 873], Debtors, Pegasus, and Processors resolved the issues relating to the Pegasus Reserve, the Pegasus Request and the Supplement subject to the Court's retention of jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, and enforcement of the Pegasus Order.

G. As described on the record before the Court on December 10, 2018, in the 9019 Motion, and at the hearing on the 9019 Motion, the Debtors, and Processors have agreed to resolve all disputes between Debtors on one hand and Processors on the other hand, including without limitation the Stay Violation Motion, the Processors' Motion, and Debtors' assertion that the funds accumulated in the Breach Reserve prior to the Petition Date are recoverable as preferences or fraudulent transfers or on any other basis (the "Recovery Allegations"), except

those obligations arising under the Pegasus Order and this Order (provided that to the extent of any inconsistency between the Pegasus Order and this Order as it relates to the Debtors' obligations under the Pegasus Order, this Order shall prevail), and have agreed to the terms as set forth below in resolution of all such disagreements; now therefore,

IT IS HEREBY ORDERED THAT:

1. Any objections to the 9019 Motion that were not withdrawn are overruled and the 9019 Motion is granted.

2. The Pegasus Order remains in full force and effect, provided that to the extent of any inconsistency between the Pegasus Order and this Order as it relates to the Debtors' obligations under the Pegasus Order, this Order shall prevail. For avoidance of doubt, the language of paragraph 4 of the Pegasus Order that provides "all processing for all merchant accounts related to the Pegasus Locations and all of Debtors' other merchant accounts processed under the MPA, without exception or limitation, shall terminate on December 31, 2018", shall remain in full force and effect.

3. Within three (3) business days after entry of this Order, pursuant to the same wire instructions that Debtors provided Processor for releasing funds under the Pegasus Reserve, Processor shall pay to Debtors $1,300,000.00 from the Breach Reserve.

4. Processors collectively have, and are granted, an allowed superpriority administrative expense claim against Debtors' estates in the maximum aggregate amount of up to $1,300,000.00 (the "Processors' Superpriority Administrative Claim") to the extent Processors establish a postpetition breach of the MPA and related damages or other postpetition amounts due under the MPA or establish a postpetition right to payment or reimbursement under the MPA

not otherwise resolved by or released under this Order.  Subject to Paragraph 9 of this Stipulated Order, the fees, costs and other charges collected by Processors in the ordinary course of business to date and through December 31, 2018 shall not be part of the Processors' Superpriority Administrative Claim.  The Processors' Superpriority Administrative Claim shall be (i) junior to any claims and liens granted pursuant to the Order Approving Liquidation Sale Of The Debtors' Assets And Granting Related Relief [Dkt No. 640] (the "Agency Sale Order") to the Agent (as defined in the Agency Sale Order), (ii) junior to any superpriority administrative claims and liens of the Prepetition Term Loan Creditors (defined below) arising under the *Final Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 and 507 (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Dkt. No. 467], as amended and modified (the "Final DIP Order"), including, but not limited to the adequate protection liens and superpriority administrative claims of the Prepetition Term Loan Creditors (as defined in the Final DIP Order), (iii) junior to the DIP Carve-Out (as defined in the Final DIP Order), (iv) junior to valid and properly perfected pre-petition secured claims and liens, (v) junior to liens (but not administrative claims other than those in favor of the Prepetition Term Loan Creditors (as defined in the Final DIP Order)) granted and approved by this Court prior to the date hereof, and (vi) senior to all other claims against Debtors' estates, including without limitation administrative claims, other superpriority administrative claims (except for the superpriority administrative claims granted to the Prepetition Term Loan Creditors pursuant to the Final DIP Order), and unsecured claims.  No plan of reorganization or liquidation or other order shall adversely affect the foregoing priority of the Processors' Superpriority Administrative Claim.

This Order shall constitute granting of superpriority administrative status with respect to the Processors' Superpriority Administrative Claim, and Processors need not separately file a claim with the Court or Prime Clerk for the Processors' Superpriority Administrative Claim beyond the itemization with supporting documentation set forth in the next sentence; provided that Processors shall not be bound by any other order of this Court in this case with respect to the filing of claims, including any bar date order. In order to determine the amount of the Processors' Superpriority Administrative Claim, at any time or times no later than July 10, 2019, Processor and/or Swipe shall file with the Court and serve one or more itemizations of charges and amounts Processors believe constitute the Processors' Superpriority Administrative Claim, together with all backup and supporting documentation for Processors' belief and serve such statement on the Application Notice Parties (defined below). The Application Notice Parties shall have 30 days after service of any such filing to file any objection with the Court. If a timely objection is filed, the Court shall resolve such objection unless Processors and all timely objecting parties resolve it between themselves prior to the Court's resolution. If a timely objection is not made, the amount claimed by Processor and/or Swipe shall be deemed allowed as part of the Processors' Superpriority Administrative Claim.

5. The Processors' Superpriority Administrative Claim shall apply to and serve as the basis for reimbursement for any and all amounts arising on or after the Petition Date under the MPA (or otherwise) to which Processor or Swipe is entitled. For avoidance of doubt, the Processors' Superpriority Administrative Claim shall not be applicable to any damages resulting from the Data Breach; provided that for avoidance of doubt, the Processors' Superpriority Administrative Claim shall apply to and serve as reimbursement for any damages resulting from the Debtors' failure after the Petition Date to maintain sufficient data security and from any data

breach occurring after the Petition Date. If on the effective date of any plan of reorganization or liquidation (the "Plan Effective Date") the liquidated and allowed amount of the Processors' Superpriority Administrative Claim is less than $1,300,000.00, then (a) on the Plan Effective Date, Processors shall be paid the liquidated and allowed amount of the Processors' Superpriority Administrative Claim (subject to payment of the senior claims specified in paragraph 4 above), and (b) the Debtors shall reserve for the benefit of Processors, the difference between $1,300,000.00 and the liquidated and allowed amount of the Processors' Superpriority Administrative Claim paid to Processor and/or Swipe on the Plan Effective Date.

6. Independent of the Processors' Superpriority Administrative Claim, Processors shall be entitled to retain and apply, solely on the terms set forth in this paragraph 6 and the MPA, the $2,411,622.28 balance of the Breach Reserve (the "Breach Reserve Balance"). The Breach Reserve Balance shall secure and be available to pay on the terms set forth in this paragraph 6 and the MPA, and Processors shall be entitled to apply the Breach Reserve Balance as set forth on the terms in this paragraph 6 and the MPA, to any and all amounts under the MPA to which Processor or Swipe is entitled arising before the Petition Date. To the extent, if any, there is a conflict between the MPA and this Order, this Order shall prevail. Notwithstanding the foregoing, the parties reserve their respective rights, and such rights are expressly preserved hereby, as to whether or not Processors are entitled to apply the Breach Reserve Balance to any and all amounts under the MPA to which Processor or Swipe is entitled arising on or after the Petition Date. Prior to applying any Breach Reserve Balance to satisfy amounts under the MPA to which Processor or Swipe is entitled, Processors shall file and serve on: (i) counsel to Gordon Brothers Finance Company, (ii) Debtors' counsel; and (iii) the office of the United States Trustee (such parties, the "Application Notice Parties") their proposed application of the Breach Reserve

Balance. If any of the Application Notice Parties timely files and serves a written objection and request for hearing on the next available date on the Court's calendar to the requested application of the Breach Reserve Balance within ten (10) days after service of the Processors' notice (the "Notice Period"), then the Processors shall not be authorized to consummate their proposed application of the Breach Reserve Balance absent (i) subsequent written agreement between the Processors and the objecting Application Notice Party, or (ii) Court order approving the proposed application of the Breach Reserve Balance. If no objection is timely filed within the Notice Period, Processors shall be entitled to consummate the proposed application of the Breach Reserve Balance after the passage of the Notice Period without further Court order or other act. Processors shall be entitled to hold and apply the Breach Reserve Balance as set forth herein through June 30, 2019; provided that if Processor has not received Visa's, any other credit card company's, or the Sponsor Bank's final liability calculation from the Data Breach on or before June 15, 2019, the June 30, 2019 date shall be extended to the later of (i) August 30, 2019, (ii) such further date agreed to among the Processors, Debtors and the Prepetition Term Loan Agent (with such consent not to be unreasonably withheld if Processors have not received Visa's final liability calculation from the Data Breach) or (iii) such other date set by order of the Court entered prior to August 30, 2019 (the "Breach Reserve Balance End Date"). On or before 8 business days after the Breach Reserve Balance End Date, Processors shall return to Debtors the amount as of the Breach Reserve Balance End Date remaining in the Breach Reserve Balance, if any, net of any amounts (i) to which Priority or Swipe is entitled under the MPA that have been determined on or before the Breach Reserve Balance End Date, but not yet paid, and (ii) that are subject to pending objections to proposed applications of the Breach Reserve Balance - - whether such amounts ultimately have to be returned to the Debtors will depend on the resolution of the

objections. At all times before or after the Breach Reserve Balance End Date, (i) this Court shall retain jurisdiction over any disputes regarding the terms of this Order, the Processors' Superpriority Administrative Claim, and the Breach Reserve Balance, and (ii) Debtors, Processor or Swipe may make a motion on regular notice under the Local Bankruptcy Rules for the District of Delaware related to any matter with respect to this Order, the Processors' Superpriority Administrative Claim, the Breach Reserve Balance, and the MPA, and any disputes that arise in connection therewith.

7. Without limiting the provisions of paragraph 6, Processors shall be entitled to apply $435,208.53 of the Breach Reserve Balance to pay (or to reimburse Processor if Processor has already made payment) the ADC Operational Reimbursement assessed by Mastercard on November 27, 2018 arising out of the Data Breach without further order.

8. Processors, on one hand, and Debtors on the other hand, hereby waive and release any and all claims that either of them had, has or may have (and Debtors also waive and release any claims that they had, have, or may have against Sponsor Bank) related in any manner to (i) Processors' accumulation of reserves of funds on Store 688, (ii) the facts, claims, assertions and arguments made in the Stay Violation Motion and the Processor Motion, including without limitation, the stay violations alleged in the Stay Violation Motion, the allegations that such alleged stay violations were willful, the bad faith allegations made by Debtors, Processors' and Debtors' respective alleged rights to recover damages, including attorneys' fees and punitive damages, and the requests of Processors for relief from the automatic stay, adequate protection and an order compelling the assumption or rejection of the MPA, any allegations of bad faith or misconduct by Debtors or the alleged rights to relief from the automatic stay, adequate protection, and rights to require assumption or rejection of the MPA, (iii) the Recovery

Allegations, (iv) the facts, claims, assertions and arguments made in the Pegasus Request and related assertions made by the Debtors, including without limitation, with respect to any and all funds accumulated in the Breach Reserve or the Pegasus Reserve, and (v) the handling of the merchant accounts associated with Debtors' locations; *provided however*, any release of Sponsor Bank in this paragraph 8 shall become null and void and of no further force or effect and all such rights shall be restored, if Sponsor Bank (or any successor or assign or other party asserting any claim of Sponsor Bank) threatens, asserts or brings any claim or cause of action with respect or in any way related to the merchant accounts associated with Debtors' locations with the exceptions of claims or causes of action relating to right and liabilities arising under (a) the MPA, (b) the Pegasus Order, and (c) this Order and the provisions hereof. For avoidance of doubt, all of the waivers and releases in this paragraph 8 do not result in the waiver or release of the rights and obligations of the parties under (i) this Order, (ii) the Pegasus Order, (iii) the Bankruptcy Code except as the rights of the respective parties are modified by the Pegasus Order and this Order, and (iv) the MPA (provided that to the extent of any conflict between the MPA and this Order, this Order shall prevail).

9. The terms hereof are a negotiated settlement, with no admission of liability on either side, and each party will bear their own fees, costs and expenses with respect to the Motions. This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

10. All references within this Order to the Debtors shall (i) include the Debtors and their successors and assigns, including, without limitation, any chapter 7 trustee, responsible officer, examiner, or other estate representative appointed with respect to any of the Debtors' estates, and (ii) exclude Pegasus.

*[Signature]*

**Dated: January 3rd, 2019**
**Wilmington, Delaware**

-11-

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**