**<u>EXHIBIT A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| J&M SALES INC., *et al.*, | Case No. 18-11801 (LSS) |
| Debtors[1] | Jointly Administered |

### NOTICE OF RULE 30(b)(6) DEPOSITION

**TO:**  Christopher M. Samis, Esq.
L. Katherine Good, Esq.
Aaron H. Stulman
WHITEFORD, TAYLOR & PRESTON, LLC
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, DE  19801
Email: csamis@stplaw.com
kgood@wtplaw.com
astulman@wtplaw.com

**PLEASE TAKE NOTICE** that on January 17, 2019 commencing at 10:00 a.m. (Prevailing PT) at the offices of Sheppard Mullin, 1901 Avenue of the Stars, 16th Floor, Los Angeles, CA 90067, Priority Payment Systems, Inc. and Swipe Payment Solutions, Inc. (collectively, "Processors"), by their undersigned counsel, will take a deposition upon oral examination in accordance with Fed. R. Civ. P. 26 and 30(b)(6) as made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7026, 7030 and 9014, of each corporate designee ("Designee Deponent") of Pegasus Trucking LLC ( "Pegasus") in connection with *Priority Payment Systems'* *and Swipe Payment Solutions' Emergency Motion to Enforce Stipulated Order re: Credit and*

---

[1] The Debtors in the above-captioned chapter 11 cases ("Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: J & M Sales Inc. (4697); National Stores, Inc. (4874); J & M Sales of Texas, LLC (5979); FP Stores, Inc. (6795); Southern Island Stores, LLC (8099); Southern Island Retail Stores LLC (4237); Caribbean Island Stores, LLC (9301); Pazzo FNB Corp. (9870); Fallas Stores Holdings, Inc. (6052); and Pazzo Management LLC (1924). The location of the Debtors' service address is 15001 South Figueroa Street, Gardena, California 90248.

*Debit Card Processing Entered November 23, 2018* [Dkt No. 965] (the "Motion to Enforce"), and

the *Opposition of Pegasus Trucking, LLC to Emergency Motion of Priority Payments Systems and*

*Swipe Payment Solutions to Enforce Stipulated Order Re: Credit and Debit Card Processing*

*Entered November 23, 2018* filed in the above-captioned jointly administered chapter 11 cases on

December 19, 2018.  [Doc. No. 1025], regarding topics as more specifically set forth in Schedule

C of Exhibit A that will be contemporaneously served as an attachment to this Notice upon

Pegasus.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Fed. R. Civ. P. 30(f)(2)

and Fed. R. Civ. P. 34, no later than 10:00 a.m. (Prevailing PT) on January 14, 2019, Pegasus shall

produce the documents described in Schedule D of Exhibit A.  The deposition will be recorded

stenographically and/or by video and will continue from day to day until completed or adjourned.

Dated:  January 10, 2019
      Wilmington, DE

**GIBBONS P.C.**

By: */s/ Natasha M. Songonuga*
Natasha M. Songonuga, Esq. (Bar No. 5391)
300 Delaware Avenue, Suite 1015
Wilmington, DE 19801-1671
T:  302-518-6300
F:  302-429-6294
E-mail:  nsongonuga@gibbonslaw.com

-and-

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
Alan Feld, Esq.
Ted Cohen, Esq.
333 S. Hope Street, 43rd Floor
Los Angeles, CA 90071
T:  213-620-1780
F:  213-620-1398
E-mail:  afeld@sheppardmullin.com
E-mail:  tcohen@sheppardmullin.com
*Counsel for Priority Payment Systems, Inc. and*
*Swipe Payment Solutions, Inc.*

-2-

## SCHEDULE A

### DEFINITIONS

The following terms used herein shall have the meanings set forth below:

1.      "Cash Management Order" means the *Order (I) Authorizing (A) Continuation of Existing Cash Management System, (B) Maintenance of Existing Business Forms and Bank Accounts, (C) Continuation of Intercompany Transactions, and (D) Payment of Related Prepetition Obligations* entered on an interim basis on August 7, 2018, and on a final basis 20 days later on August 27, 2018 [Doc Nos. 82, 273].

2.      "Communication" means any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, or opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements, and press releases.

3.      "Court" means the United States Bankruptcy Court for the District of Delaware presiding over the Debtors' chapter 11 cases.

4.      "Daily Reports Combined File" means the PDF document provided to Processors' counsel by email dated January 6, 2019 from Debtors' counsel Karen B. Dine.

5.      "Debtors" means the debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases, and each of their respective current or former principals, officers, directors, employees, shareholders, members, partners, managers, agents, attorneys, accountants, consultants, representatives and other persons acting or purporting to act on their behalf.

6.      "Document" means any document or electronically stored information within the scope of the FED. R. CIV. P. 34(a), including but not limited to Communications, correspondence,

internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, records of conversations or messages, whether in writing or upon any mechanical, electrical, or electronic recording device, e-mail and phonemail messages, tape or electronic recordings, videotapes, diaries, sketches or designs, maps, appointment or telephone records, newspaper or magazine articles, press releases, banking records and notices, bills and invoices, and information of whatever kind stored on computers, including computer disks, hard drives, and other media. In all cases where originals or non-identical copies are not available. "Documents" also means identical copies of original documents and copies of non-identical copies.

7.      "Including" means "including, but not limited to."

8.      "MPA" means those certain Merchant Application and Processing Agreements entered into on or about March 14, 2014 between one or both of the Processors and certain Debtors.

9.      "Motion to Enforce" means *Priority Payment Systems' And Swipe Payment Solutions' Emergency Motion to Enforce Stipulated Order Re: Resolution of Credit And Debit Card Processing Entered November 23, 2018* filed in the above-captioned jointly administered chapter 11 cases on December 10, 2018.  [Doc. No. 965].

10.      "Pegasus" means Pegasus Trucking, LLC.

11.      "Pegasus Objection to Motion to Enforce" means the *Opposition of Pegasus Trucking, LLC to Emergency Motion of Priority Payments Systems and Swipe Payment Solutions to Enforce Stipulated Order Re: Credit and Debit Card Processing Entered November 23, 2018* filed in the above-captioned jointly administered chapter 11 cases on December 19, 2018.  [Doc. No. 1025].

12.    "Pegasus Stores" means collectively all of the Debtors' operating locations sold to Pegasus pursuant to the sale order entered by the Court on October 17, 2018 [Doc. No 670], including, but not limited to, all stores for which the Debtors processed credit and debit card transactions for the benefit of Pegasus through the Processors, whether or not such store was identified in any document filed with the Court listing the operating stores sold to Pegasus.

13.    "Person" means any natural person, any business entity (whether sole proprietorship, partnership, association, limited liability company or corporation), and any department, affiliate, joint enterprise or representative thereof.

14.    "Processors" means collectively Priority Payment Systems, Inc. and Swipe Payment Solutions, Inc.

15.    "Relating to/Relates to" means any Document that constitutes, contains, embodies, identifies, states, refers to, deals with, or pertains to.

16.    "Representative" means any officer, director, partner, joint entrepreneur, agent, employee, accountant, attorney, servant or any other person presently or formerly acting for or on behalf of the person referred to in any Document Request.

17.    "Response to Motion to Enforce" means *Debtors' Response to Priority Payment Systems' and Swipe Payment Solutions' Emergency Motion to Enforce Stipulated Order Re: Credit and Debit Card Processing Entered November 23, 2018* filed in the above-captioned jointly administered chapter 11 cases on December 19, 2018.  [Doc. No. 1026].

18.    "Stipulated Order" means the *Stipulated Order Re: Credit and Debit Card Processing* entered by the Court on November 23, 2018 [Doc. No. 873].

19.    "Transfers" shall have the definition set forth in 11 U.S.C. § 101(54).

20.    "You/Your/Yourself" means Pegasus and any of its agents, employees, servants, attorneys, accountants, examiners, partners, associates, officers, directors, representatives and any other person or entity acting or who has acted on its behalf.

## SCHEDULE B

## INSTRUCTIONS

1.      If any part of the following request cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for your inability to respond to the remainder and stating whatever information or knowledge you have concerning the un-responded to portion.

2.      All Documents requested herein shall be produced in an orderly fashion, with appropriate markings or identification to enable the source of the Documents to be identified.  If you object to any of the requests herein, state with specificity the reasons for your objection(s) with respect to each such request.

3.      If any Document requested herein was formerly in your possession, custody or control and has been lost or destroyed or otherwise disposed of, you are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted, and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

4.      A request for any Document shall be deemed to include a request for any and all drafts and non-identical copies, together with transmittal sheets, cover letters, exhibits, enclosures, or attachments to such Document, in addition to the Document in its full and unexpurgated form.

5.      Documents should be segregated according to the number of the request to which you are responding or produced in the manner they are kept in the ordinary course of business.

6.      Electronically stored information (ESI) shall be produced in an intelligible format or together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible and shall include metadata.

7.      If any privilege is claimed as to any Document(s) requested or sought to be identified herein, state, (a) the type of Document; (b) the general subject matter of the Document; (c) the date of the Document; and (d) such other information as is sufficient to identify the Document, including, the author of the Document, the addressee of the Document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the Document.

8.      The following requests are to be deemed continuing in nature and in the event you become aware of or acquire additional information relating or referring thereto, such additional information is to be promptly produced.

9.      Unless otherwise specified, all requests seek production of Documents and Communications from the August 6, 2018 petition date through the date hereof.

10.     Unless otherwise specified, all requests seek production of Documents and Communications by, between or among you, Pegasus' affiliates, employees, officers, directors, representatives, accountants, attorneys and others, without limitation.

## SCHEDULE C

## SUBJECTS OF EXAMINATION

1.      Communications between any representative of one or more of the Debtors and any representative of Pegasus relating in any way to (i) the MPA, including relating to the terms and conditions of the MPA, (ii) Processors or either of them, (iii) the Motion to Enforce, (iv) the Response to Motion to Enforce, (v) the Pegasus Objection to Motion to Enforce, (vi) the Pegasus Stores, (vii) the Stipulated Order, or (viii) the Daily Reports Combined File.

2.      Communications between and among any representatives of the Debtors and any representative of Pegasus in any way relating to fees to be paid to Processors, including any method to block Processors from taking their fees for services provided to the Debtors for December 2018 from Debtors' bank account(s) for the Pegasus Stores.

3.      The factual bases for Pegasus' assertion in the Pegasus Objection to Motion to Enforce that "It now appears that the actual amount being improperly withheld was closer to $5 million."

4.      The factual bases for Pegasus' assertion in the Pegasus Objection to Motion to Enforce, that "Movants may have engaged in self-help and may be withholding more than the 15% authorized by the Order" as of the date of the filing of the Pegasus Objection to Motion to Enforce on December 19, 2018.

5.      The factual bases for Pegasus' assertion in the Pegasus Objection to Motion to Enforce that "Debtors have recently calculated that Movants were actually holding unremitted collections of over $4.95 million, and therefore, may still retain over $750,000 of such Reserve."

6.      Internal Pegasus Communications, and Communications between any representative of Pegasus and any witness Pegasus intends to call at the hearing on the Motion to

7

Enforce relating in any way to data in the Daily Reports Combined File or any of the data included therein.

7.     Any analysis or report done by the Debtors (and provided to Pegasus) and/or Pegasus based on the Daily Reports Combined File or any data included therein.

8.     Communications between any representative of Pegasus and any witness Pegasus intends to call at the hearing on the Motion to Enforce.

## SCHEDULE D

DEFINITIONS

The Definitions set forth in Schedule A are incorporated herein.

REQUESTS

1.      All Documents (specifically including e-mails, including e-mails between or among counsel) constituting or referring or relating to Communications between the Debtors and Pegasus referring in any way to Processors and/or relating to in any way (i) the MPA, including relating to the terms and conditions of the MPA, (ii) Processors or either of them, (iii) the Motion to Enforce, (iv) the Response to Motion to Enforce, (v) the Pegasus Objection to Motion to Enforce, (vi) the Pegasus Stores, (vii) the Stipulated Order, or (viii) the Daily Reports Combined File.

2.      All Documents (specifically including e-mails, including e-mails between or among counsel) constituting or referring or relating to Communications between and among any representative of the Debtors and any representative of Pegasus in any way relating to fees to be paid to Processors, including any method to block Processors from taking their fees for services provided to the Debtors for December 2018 from Debtors' bank account(s) for the Pegasus Stores.

3.      All Documents (specifically including e-mails, including e-mails between or among counsel) supporting or refuting the Pegasus' assertion in the Pegasus Objection to Motion to Enforce that "It now appears that the actual amount being improperly withheld was closer to $5 million."

4.      All Documents (specifically including e-mails, including e-mails between or among counsel) supporting or refuting the Pegasus' assertion in the Pegasus Objection to Motion to Enforce filed on December 19, 2018, that "Movants may have engaged in self-help and may be withholding more than the 15% authorized by the Order."

9

5.      All Documents (specifically including e-mails, including e-mails between or among counsel) supporting or refuting the Pegasus' assertion in the Pegasus Objection to Motion to Enforce that "Debtors have recently calculated that Movants were actually holding unremitted collections of over $4.95 million, and therefore, may still retain over $750,000 of such Reserve."

6.      All Documents (specifically including e-mails, including e-mails between or among counsel) upon which Pegasus will rely with respect to the Pegasus Objection to Motion to Enforce and/or in connection with the hearing on the Motion to Enforce.

7.      All Documents (specifically including e-mails, including e-mails between or among counsel) constituting or referring or relating to Communications between any representative of Pegasus and any witness that Pegasus intends to call at the hearing on the Motion to Enforce.

8.      All Documents (specifically including e-mails, including e-mails between or among counsel) constituting or referring or relating to any facts about which any witness Pegasus expects to call at the hearing on the Motion to Enforce may testify.

9.      All Documents referring to or relating to the $4,215,556.78 wired to the Debtors for the benefit of Pegasus pursuant to the Stipulated Order.

10.     All analyses, reports or other documents prepared (or provided to Pegasus by the Debtors) based on the Daily Reports Combined File or any data therein.