**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 7 |
| J & M SALES, INC., *et al.*[1] | Case No. 18-11801 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 22, 2019, at 1:30 p.m. (ET)** |
| | **Objection Deadline: July 12, 2019 at 4:00 p.m. (ET)** |
| | **Re: Docket Nos. 873, 1534 & 1547** |

**PEGASUS TRUCKING, LLC'S: (I) OPPOSITION TO PROCESSORS' MOTION FOR CLARIFICATION OR RECONSIDERATION OF ORDERS PURSUANT TO FED. R. BANKR. P. 9023 AND 9024; AND (II) COUNTER-MOTION FOR CONTEMPT AND SANCTIONS AGAINST PROCESSORS**

Pegasus Trucking, LLC ("Pegasus"), by and through its undersigned counsel, hereby: (I) opposes the *Motion For Clarification or Reconsideration of Orders Pursuant to Fed. R. Bankr. P. 9023 And 9024* [Docket No. 1547] (the "Motion"), filed by Priority Payment Systems, Inc. ("PPS"), and Swipe Payment Solutions, Inc. (together with PPS, the "Processors"); and (II) moves for an order holding the Processors in contempt and awarding Pegasus sanctions against the Processors for their violation of the Court's Letter Ruling:[2]

**INTRODUCTION**

Only two weeks after this Court[3] specifically found that "[t]he Processors violated the agreement between the parties" as embodied in the Stipulated Order, the Processors are at it

---

[1] The Debtors in the above-captioned cases, along with the last four digits of each Debtor's federal tax identification number, are: J & M Sales Inc. (4697); National Stores, Inc. (4874); J & M Sales of Texas, LLC (5979); FP Stores, Inc. (6795); Southern Island Stores, LLC (8099); Southern Island Retail Stores LLC (4237); Caribbean Island Stores, LLC (9301); Pazzo FNB Corp. (9870); Fallas Stores Holdings, Inc. (6052); and Pazzo Management LLC (1924). The location of the Debtors' service address is 15001 South Figueroa Street, Gardena, California 90248.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[3] The Honorable Laurie Selber Silverstein, presiding.

again.  In the guise of a motion for clarification or reconsideration of the Court's Letter Ruling, the Processors attempt to attain post-facto approval of their failure to remit the $1.65 million in the Total Pegasus Reserve (less legitimate charges) on July 1, 2019, as mandated by and in violation of the Stipulated Order and the Letter Ruling.  Rather than simply comply with the Court's orders, the Processors filed the Motion and, without awaiting its adjudication, unilaterally withheld from Pegasus almost $1.3 million - *80% of the Total Pegasus Reserve* - on account of purported prior and future attorneys' fees.  The Motion should be denied, and Pegasus should be awarded its attorneys' fees in connection with the present proceedings.

The Court's Letter Ruling requires no clarification.  It is very clear with respect to the Processors' entitlement to attorneys' fees.  As the ruling states:  "[The Court] will not grant *either* party sanctions, attorneys fees or expenses."  Letter Ruling [Docket No. 1534] (Motion, Exhibit "2"), p. 5 (emphasis added).[4]  Likewise, no grounds exist to reconsider the ruling – there is not new law, no new facts, and no clear error of law.[5]

The Processors contend that Pegasus is bound by the MPA and it authorizes the Processors to recover their attorneys' fees from Pegasus's funds on reserve.  The Processors' position lacks merit and reflects a flawed interpretation of the Stipulated Order, the MPA, and the Letter Ruling.

---

[4] *See also* Letter Ruling, p. 6 ("And, my observation is that neither party acted entirely in good faith in seeking to recover this matter.  Further, it is evident that there was no cooperation between the parties (as a court expects there to be) in placing the dispute before me for decision.  While I do not always share my observations of the parties' conduct before the court, I do so here because it further informs my decision *not* to award *either* party requested sanctions, costs or attorneys fees.") (emphasis added).

[5] *See Rotech Mem'l Hosp. v. Blount Mem'l Hosp. (In re Integrated Health Servs.)*, 2001 Bankr. LEXIS 2070, *3-4 (Bankr. D. Del. Jan. 5, 2001) ("A motion for reconsideration under Federal Rule of Bankruptcy Procedure 9023 is an extraordinary means of relief" and requires a hosing of either "'(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error [of law] or prevent manifest injustice'") (quoting *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).  The Processors do not even identify the standard for reconsideration or clarification, let alone present grounds or evidence to meet the standard.

As an initial matter, Pegasus is not bound by the MPA.  Pegasus is not a party or a signatory to it.  The MPA only governed the Processors' processing for *the Debtors*.  There is no processing agreement between the Processors and Pegasus, with the Stipulated Order representing the only document governing the parties' relationship.  The Processors conceded this much at the evidentiary hearing on the Underlying Motions.[6]  Instead, processing of transactions at Pegasus stores was accomplished by a Transition Services Agreement (the "TSA") between Pegasus and the Debtors (not between Pegasus and the Processors).

Contrary to the Processors' contention, the Stipulated Order does not "explicitly incorporate" the MPA.  Motion, ¶ 18.  The Stipulated Order simply authorized the Processors to maintain the Total Pegasus Reserve in an amount up to $1,650,000 from credit and debit card transactions processed for *the Debtors* at Pegasus stores between October 19, 2018, and December 31, 2018 (the "Processing Period"), with their entitlement to maintain this reserve expiring on June 30, 2019.  It is true the Stipulated Order permitted the Processors to apply particular charges "on merchant accounts related to processing at the Pegasus Locations" during the Processing Period.  *See* Stipulated Order, ¶ 3.  But it does not incorporate the MPA and does not authorize the Processors' recovery of any attorneys' fees; especially not *future* attorneys' fees for an unrelated adversary proceeding to which the Processors are not even a party.

And, as noted above, the Letter Ruling explicitly refused to allow the Processors to recover any attorneys' fees.  The statement in the Letter Ruling that "the validity of the charges assessed by the Processors against the [Total Pegasus Reserves] is not before [the Court]" does not change this fact.  Those "charges" to which the Court refers and left open for later

---

[6] *See* May 14, 2019 Hr'g Tr. at 96:14-98:20 ("May 14 Transcript"), excerpts of which is attached as Exhibit 1 to Declaration of Alan D. Tippie, filed contemporaneously herewith.

adjudication are *not* attorneys' fees, but only processing-related charges (as set forth in paragraph 3 to the Stipulated Order).  This is clear from the fact that no attorneys' fees were identified in either of the Underlying Motions to render this footnote applicable to attorneys' fees, and no attorneys' fees were "assessed by the Processors against the Reserve" at all at the time of the Letter Ruling to render this footnote applicable to attorneys' fees.  Moreover, it would make no sense for the Court to expressly deny attorneys' fees to the Processors, yet leave attorneys' fees open for later adjudication.

In short, the Processors are in clear violation of both: (1) the Stipulated Order - the only document governing the relationship between Pegasus and the Processors - which required a release of the funds to Pegasus no later than July 1, 2019; and (2) the Letter Ruling, which expressly disallowed the Processors any recovery of any amount of attorneys' fees.  As set forth in Pegasus's recently-filed emergency motion [Docket No. 1556], these violations are causing severe harm to Pegasus and should not go unremedied.

Based on the foregoing, the Processors' Motion should be denied, and the Court should find the Processors in contempt for violations of the Stipulated Order and the Letter Ruling, and award Pegasus its attorneys' fees and costs incurred in connection with this new round of litigation the Processors initiated.[7]

## **FACTUAL BACKGROUND**[8]

### A.  The Debtors, Processors, And Pegasus's Purchase of Estate Assets

1.    On or about March 14, 2014, certain of the Debtors and PPS entered the MPA.

---

[7] To the extent the Court rules in Pegasus's favor, Pegasus respectfully requests that the counter-motion for sanctions be heard at a date and time to be determined with an accompanying objection deadline.

[8] On July 3, 2019, Pegasus filed its *Emergency Motion of Pegasus Trucking, LLC to Compel Processors Immediate Release to Pegasus of Funds Withheld Account of "Estimated Future Attorneys' Fees" in Violation of November 23, 2019, Stipulation Order Re: Credit and Debit Card Processing and Courts June 14, 2019, Letter Ruling* [Docket No. 1556] (the "Pegasus Emergency Motion"), which set forth the relevant factual background in detail.  Pegasus

*See* Stipulated Order, ¶ A.  Pursuant to the MPA, PPS was providing credit and debit card

processing services to the Debtors.

2.      Pegasus is not a signatory or party to the MPA or to any processing agreement

with PPS or Swipe.  The Processors conceded this fact at the evidentiary hearing on the

Underlying Motion,  testifying that Pegasus was ***not*** the merchant under the MPA as the

Processors now contend in the Motion:

> [Counsel for Pegasus]:  The [S]tipulated [O]rder created an
> arrangement of some sort whereby you could process at the
> Pegasus stores, is that right?
>
> [Processor Witness]:  That's correct.
>
> Q      But when you were processing, you were actually
> processing on behalf of the debtor, right?
>
> A      Yeah, according to the merchant processing agreement.
>
> Q      Right.  In fact, all the monies that you remitted were
> remitted to the debtor, correct?
>
> A      Correct.
>
> Q      [D]id you ever remit monies directly to Pegasus?
>
> A      No.
>
> \* \* \* \*
>
> Q      Okay.  See where it says [in the Stipulated Order], there
> shall be no new merchant application from Pegasus?
>
> A      Correct.
>
> Q      Was that a term that you negotiated?
>
> A      Yes.
>
> Q      Okay.  And so, you don't want Pegasus, I presume, as a

incorporates all such facts herein by this reference.  Pegasus repeats certain of those facts herein for the Court's
convenience, and includes certain additional information or facts not necessarily contained in the Pegasus Emergency
Motion.

merchant?

A      Correct.

Q      Okay.  And, to the best of your knowledge, was any application ever submitted after this [Stipulated O]rder was entered?

A      No.

May 14 Transcript, 98:8-20, 104:2-12.

3.      On August 6, 2018, the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      On October 17, 2018, this Court entered its order approving the Debtors' going-concern sale of over 85 of their store locations to Pegasus [Docket No. 670] (the "Sale").  The Sale closed on October 19, 2018.

5.      In connection with the Sale, the Debtors and Pegasus entered into the TSA, which was filed with the Court on November 19, 2018 [Docket No. 843].  *See* Stipulated Order, ¶ D.  A true and correct copy of the TSA is appended as Exhibit 1 to the separately-filed declaration of Dan Bliss ("Bliss Declaration").  Pursuant to the TSA, the Debtors utilized the MPA to process credit and debit card transactions at the store locations purchased by Pegasus.  *See* Stipulated Order, ¶ D; TSA (Bliss Decl., Exhibit 1), ¶ 2(b).

6.      The Processors are not signatories or parties to the TSA.

7.      Based on this arrangement, the Processors were to process credit and debit card transactions generated from stores operated by the Debtors as well as Pegasus, and thereafter turnover collected funds to the Debtors, less certain processing fees and charges.  The Debtors were to then remit the net collections relating to the Pegasus stores to Pegasus.

8.      The Processors were not remitting any funds directly to Pegasus; rather, as noted above, the Processors were remitting the collected funds to the Debtors, which, in turn, remitted

those funds to Pegasus (less processing fees and charges under the TSA).  *See* May 14

Transcript, 98:15-20) ("In fact, all the monies that you remitted were remitted to the debtor,

correct? **A** Correct. **Q** [D]id you ever remit monies directly to Pegasus? **A** No.")

### B.  The Processors' Hold on Collected Funds And The Resulting Stipulated Order

9.      Having just assumed responsibility for over 85 locations and having expended

significant amounts of money to acquire the assets, Pegasus relied upon and required access to

all revenue generated at the locations that it acquired so that it could continue its new operations

and build its business.  Unfortunately, its expectations of a smooth transition came to an abrupt

halt when the Processors collected but refused to release to Pegasus approximately $4.2 million

(or possibly more), representing 100% of its first month of collections (from October 25, 2018 to

November 21, 2018), thereby potentially destroying Pegasus and its business.

10.     To justify their refusal to release these funds to Pegasus, the Processors contended

they needed the funds for protection against potentially fraudulent or otherwise unauthorized

charges in light of an earlier claimed data breach.  That data breach did not arise from the

operations of Pegasus, but rather was a controversy originating with the Debtors.  Further,

Pegasus instituted security measures to protect against unauthorized charges or data breaches and

informed the Processors of these measures.  The Processors ignored this information and instead

held Pegasus's initial operating income hostage as a means to extort concessions from Pegasus.

The Processors' tactic was successful.

11.     Facing the prospect of an extended dispute that would potentially tie up its money

for weeks, if not months, Pegasus had no feasible choice but to reach an agreement with the

Processors to release the collected cash.  That agreement was embodied in the Stipulated Order

[Docket No. 873].

12.     In brief, the Stipulated Order provides, among other things, that:

a.      the Processors would immediately turn over to Pegasus all monies that were being held, less $1 million (the "$1 Million Reserve") (Stipulated Order, ¶ 2);

b.      from debit and credit card collections through December 31, 2018 (when the Processors' services would terminate), the Processors could retain 15% of collections to a maximum of an additional $650,000, for a total reserve of $1,650,000 (*id.*, ¶ 3);

c.      the Processors would hold the funds comprising the Total Pegasus Reserve "for 180 days following the December 31, 2018 termination of processing services, i.e., through June 30, 2019" to "cover all losses on the merchant accounts related to processing at the Pegasus locations from the closing of the Sale (October 19, 2018) through December 31, 2018" (*id.*, ¶¶ 5, 3); and

d.      the Processors would have no obligation to process any transactions after December 31, 2018 (*id.*, ¶ 4).

13.      The Stipulated Order imposes no obligations whatsoever on Pegasus.

14.      As a result of termination of the MPA and any of the Processors' obligations thereunder after December 31, 2018, except for fraudulent or unauthorized charges, any chargebacks or other returns after that date would not be processed by or through the Processors, but rather through Pegasus's new credit and debit card processing service provider.

15.      Nowhere in the Stipulated Order does it incorporate the MPA nor make Pegasus a party to the MPA.  Rather, the only document governing the relationship between Pegasus and the Processors is the Stipulated Order.  The Processors conceded this fact at the May 14, 2019, evidentiary hearing on the Underlying Motions:

> [Pegaus Counsel]:      . . . I'll say the entirety of the relationship, if any, between PPS and Pegasus is based upon this court order [the Stipulated Order]?
>
> [Processors]:  Correct.

May 14 Transcript, 104:13-16.

16.     The Stipulated Order does not include any "prevailing party" provisions or other provision that authorizes the Processors to recoup any attorneys' fees from Pegasus (especially not in connection with the Underlying Motions and definitely not in connection with the Pegasus Adversary Proceeding).

17.     Paragraph 3 to the Stipulated Order - the paragraph on which the Processors rely to withhold close to $1.3 million for alleged attorneys' fees) - does not mention attorneys' fees at all.  It only authorizes the Processors' retention of funds specifically "to cover all losses on the merchant accounts *related to processing* at the Pegasus Locations *from the closing of the Pegasus Sale (October 19, 2018) through December 31, 2018*[.]"  Stipulated Order, ¶ 3 (emphasis added).  Confinement of the reserve to such losses and only during such time period is reaffirmed in a subsequent sentence in paragraph 3 to the Stipulated Order.  *See id.* (providing that rights under the MPA are not diminished "with respect to the types of losses described in this paragraph arising during the time period referenced in this paragraph").

18.     The Stipulated Order explicitly restricts the Processors from using the Total Pegasus Reserve only "to cover any losses as described in paragraph 3, above[, to the Stipulated Order]." *Id.*, ¶ 5.

**C.  The Processors' Emergency Motion**

19.     On November 28, 2018, after the Court entered the Stipulated Order, the Processors effected a wire transfer of approximately $4.2 million.  They contended they mistakenly remitted all of the funds on hand and did not retain the $1.0 Million Reserve, contrary to the details of a communication from their own attorney, which stated that, after remittance of the $4.2 million, the Processors were still holding approximately $973,000.  To recover the allegedly over-release, on December 10, 2018, the Processors filed an emergency motion

9

[Docket No. 965] (the "Processor Emergency Motion") in which they requested the following:

> [an] order compelling Pegasus and Pegasus's lender to return the $1 million to Processor [or] . . . if Pegasus and Pegasus's lender fail to comply with this Court's directive, the Court authorize Processor to reserve 100% of the proceeds of Pegasus's credit and debit card sales until Processor achieved the full $1 Million Reserve (in addition to the Additional Reserve Processor is entitled to build up under the Stipulated Order.

Processor Emergency Motion [Docket No. 965-1], p. 4, ¶ 7.  The Processors did not seek any attorneys' fees in the Processor Emergency Motion.

20.    The Processor Emergency Motion was devoid of any support, either from a declaration or documentary standpoint.  At the Processors' request, the Court set an expedited hearing on the Processor Emergency Motion for December 20, 2018.

21.    Pegasus and the Debtors separately filed oppositions to the Processor Emergency Motion [respectively, Docket Nos. 1025 and 1026], in which they requested a detailed accounting from the Processors, an accounting missing from the Processor Emergency Motion and a document not provided prior to the hearing on the Processor Emergency Motion.

22.    Despite having been granted an expedited hearing on their Processor Emergency Motion, the Processors appeared empty-handed at the December 20 hearing.  There were no witnesses to testify in support of the Processor Emergency Motion or to address the questions raised in the oppositions.  No documents were produced or introduced.[9]

23.    After stating that the Court was not in a position to adjudicate the Processor Emergency Motion at the December 20 hearing, the Court stated that "discovery should commence" and continued the hearing.

24.    Despite the Court's instructions that discovery should commence, the Processors

---

[9] It should be noted that the opponents to the Processor Emergency Motion came prepared to the hearing with a rebuttal witness.

continued to refuse to provide any accounting, and instead caused the Court to hold a telephonic conference during which they requested that they be excused from accounting for the entire time period during which processing was being conducted at the Pegasus stores, from October 19, 2018 to December 31, 2018.  The Court rejected this request and ordered a full accounting.

25.    Eventually, the Processors delivered an accounting, partially without backup, but in three stages, with each one seemingly including information that conflicted with or that was not disclosed in the prior versions.   It should be noted, however, that the first accounting was not delivered until after debit and credit card processing had concluded.

### D.  Pegasus's Contempt Motion

26.    On March 12, 2019, in light of violations of the Stipulated Order, Pegasus filed its motion to enforce the Stipulated Order, to hold the Processors in contempt, and to award sanctions to Pegasus [Docket No. 1343] (the "Contempt Motion," and together with the Processor Emergency Motion, the "Underlying Motions").  As set forth therein, Pegasus asserted that the Processors breached the Stipulated Order in various ways more specifically discussed therein.  Among other things, Pegasus contended that the Processors improperly withheld 100% (rather than only 15%) of all collections for the period between December 23, 2018, and January 1, 2019.

27.    In addition, the Contempt Motion asserted that the Processors provided Pegasus with erroneous information in the course of discovery.

### E.  The Court's Ruling on The Underlying Motions And Pegasus's Compliance Therewith

28.    On May 14-15, 2019, the Court conducted evidentiary hearings on the Underlying Motions.  At those hearings, during cross-examination, the Processors' witness conceded that Pegasus was not a party to any processing agreement and the only document governing the

relationship between the Processors and Pegasus is the Stipulated Order.  *See* May 14 Transcript, 98:8-20, 104:2-16.

29.     On June 14, 2019, the Court issued its Letter Ruling, a true and correct copy of which is attached to the Tippie Declaration as Exhibit 2.  In that ruling, the Court expressly found that "[t]he Processors violated the agreement between the parties in withholding more than 15% for the period of December 23, 2018 to January 1, 2019."[10]  Letter Ruling, p. 5.  The Court further found that "[w]hile Mr. Brown [the Processors' witness] explained why more than 15% was withheld, [the Court] d[id] not find the reasoning consistent with the Stipulated Order."  *Id.*

30.     The Court also made clear that it was not granting "either party sanctions, attorneys fees or expenses" in connection with the Underlying Motions.  *Id.*, pp. 5, 6.

31.     While it is true that the Court noted that "[t]he validity of the charges assessed by the Processors against the Reserve is not before [it] or relevant to the resolution of the two motions at issue" (Letter Ruling, fn. 7), the Court's reference to "charges" did not include "attorneys' fees" such that an award of attorneys' fees was left open for another day.  Indeed, no attorneys' fees had been sought by the Processors nor even "assessed by the Processors against the Reserve" at that time; certainly not the $700,000 in "estimated future attorneys' fees," which, to date, still are, and may never be incurred and, even if incurred, such fees are not the responsibility of Pegasus.

32.     The Court ordered Pegasus to pay to PPS the sum of $545,821.76 within three business days.  Pegasus did not have the funds to make the payment as ordered and had no availability in its line of credit.  Consequently, on June 21, 2019, Pegasus and its secured lender,

---

[10] On the other hand, the Court expressly found that "Pegasus did not violate the letter of the Stipulated Order . . . " *Id.* at 6.

Second Avenue Capital Partners LLC, entered a "First Amendment to Credit Agreement" under which Pegasus's credit line was increased by $500,000, solely for the purpose of paying the Court ordered sum.  Pegasus drew upon this increased credit line to timely pay PPS the sum ordered by the Court in the Processor Order.

33.    This credit line increase, however, was only available for 11 days.  In anticipation that the Processors would abide by the Stipulated Order, Second Avenue demanded and Pegasus agreed to repay the additional sum advanced by no later than July 1, 2019, just 11 days after entry into the amendment to the credit agreement.  This deadline was specifically timed to coincide with the Processors' expected release of the Total Pegasus Reserves on July 1, 2019, and Pegasus specifically relied upon the release of that reserve by the Processors on July 1 in fixing the July 1 deadline to repay the advance.

34.    The failure of the Processors to comply with the Stipulated Order has also created additional cash flow problems for Pegasus.  Pegasus is a newly formed business and parking $1,105,000 and eventually $1,650,000 with the Processors (a non-vendor to Pegasus) for over six months has created a severe financial burden on Pegasus.  It relied upon and budgeted the receipt of no less than $1,600,000 of the Total Pegasus Reserves on July 1.  The Processors' Motion, feigning as an excuse not to comply with the Stipulated Order, is just another attempt by the Processors to bring Pegasus to its knees in an attempt to concede points for which the Processors have no legitimate standing.

**F.  The Adversary Proceeding**

35.    On June 25, 2019, Pegasus commenced the Adversary Proceeding.

36.    The Processors are not parties to the Adversary Proceeding and no relief is requested against them.  Rather, the complaint was filed solely against the chapter 7 trustee and three Gordon Brothers entities seeking to recover no less than $390,000 that one or more of such

entities are alleged to be holding pursuant or relating to the TSA – again, an agreement to which the Processors are not parties.

**G. The Processors' Improper Retention of The Reserve Funds And Consequent Harm to Pegasus**

37.     On June 28, 2019, a Friday evening and less than 48 hours before the June 30 expiration date of the Processors' right to hold the Total Pegasus Reserves, the Processors filed the Motion.

38.     In the Motion, of the $1.65 million Total Pegasus Reserves (which included the $545,821.76 Pegasus borrowed from its lender to pay the Processors pursuant to the Processor Order), the Processors indicated that, on July 1, 2019, they were remitting to Pegasus the sum of only $331,254.27.

39.     The Motion further states that the Processors were retaining and withholding from Pegasus the $1,318,745.73 balance.  That balance is comprised of: (a) $56,893.78 for "reject fees, chargeback damages, month end statements fees, and miscellaneous charges suffered as a result of Pegasus' processing;" (b) $561,851.95 for "Attorneys' Fees Incurred to Date;" and (c) $700,000 for "Estimated Future Attorneys' Fees."  The Processors provide no backup or support for any of these items.

40.     As of the filing of the present opposition, the Processors continue to retain and withhold from Pegasus that sum, including $1,261,851.95 on account of alleged prior and future attorneys' fees.

41.     As discussed in Pegasus' emergency motion [Docket No. 1556], the Processors' retention of these amounts for attorneys' fees is causing Pegasus substantial harm.  First, the Processors' retention of these amounts caused Pegasus to default under its credit agreement with its lender.  In reaching an agreement to increase its credit line to transmit $545,821.76 to the

Processors, Pegasus specifically relied on the Processors' mandated release of the Total Pegasus Reserves to repay the additional sums advanced by July 1, 2019.

42.    Second, the failure to release these sums is causing severe strain on Pegasus's operating needs.  Aside from the substantial attorneys' fees and costs Pegasus actually incurred in connection with the Underlying Motions, Pegasus has been denied access to and the use of all the funds the Processors' have been withholding for many months.

43.    The funds in question are monies generated from Pegasus' business operations. Pegasus requires the funds improperly held by the Processors to operate its newly formed business and there is no justification for the Processors to continue to hold such funds.

44.    In anticipation of the July 1 release, and immediately following the Court's issuance of the Letter Ruling, Pegasus requested that the Processors provide it with an estimate of the amount it would be releasing to Pegasus on July 1, 2019.  Rather than cooperate, the Processors refused to provide Pegasus with any information on the amount to be released and, indeed, failed to even disclose that it planned on withholding the vast majority of the funds on account of alleged attorneys' fees or that it was preparing and would be filing the Motion.  A true and correct copy of an e-mail exchange between respective counsel for Pegasus and the Processors reflecting such communications is attached as Exhibit 3 to the Tippie Declaration.

45.    Processors were informed that Pegasus was anticipating and budgeted the receipt of approximately $1,600,000 based on the testimony of the Processors' witness, Mr. Andre Brown, at the May 14, 2019 hearing.  Despite this report, the Processors refused to reveal their intentions to again hold Pegasus money hostage.

## **OBJECTION**

### A. **No Basis Exists to Warrant The "Extraordinary Remedy" of Reconsideration or Clarification of The Court's Ruling**

46.     The Motion seeks reconsideration or clarification of the Letter Ruling under Federal Rule of Bankruptcy Procedure 9023 (which incorporates Rule 59 of the Federal Rules of Civil Procedure) and Federal Rule of Bankruptcy Procedure 9024 (which incorporates Rule 60 of the Federal Rules of Civil Procedure).  No grounds exists for either form of relief.

47.     Courts consistently maintain that relief under these rules is an "extraordinary" remedy.  *See Rotech Mem'l Hosp. v. Blount Mem'l Hosp. (In re Integrated Health Servs.)*, 2001 Bankr. LEXIS 2070, *3-4 (Bankr. D. Del. Jan. 5, 2001) ("A motion for reconsideration under Federal Rule of Bankruptcy Procedure 9023 is an extraordinary means of relief in which the movant must do more than simply reargue the facts or law of the case"); *Calyon N.Y. Branch v. Am. Home Mortg. Corp.*, 383 B.R. 585, 589 (Bankr. D. Del. 2008) (same) (quoting *HHCA Texas Health Sews., L.P. v. LHS Holdings, Inc. (In re Home Health Corp. of Amer., Inc.)*, 268 B.R. 74, 76 (Bankr. D. Del. 2001)).

48.     As one court explained in more detail:

> One of the primary purposes of such a motion [under either Rule 59 or Rule 60] is to permit the correction of manifest errors of law or misapprehension of fact.  [Citation omitted].  The Rules are simply *not* designed to furnish a vehicle by which a disappointed party may reargue matters already argued and disposed of, nor are they aimed at providing a mechanism by which new arguments or legal theories, which could and should have been raised prior to the issuance of judgment can be later advanced.  [Citations omitted].  Attempts to take a "second bite at the apple" or pad the record for purposes of appeal (especially when new legal theories or issues are not previously argued, but subsequently come to the mind of the losing party) are thus beyond the intended scope of Rules 59 and 60.  Therefore, when issues have been carefully analyzed and a judgment has been rendered, only a change in the law or the facts upon which the court's decision was based generally justify a reconsideration or amendment of a court's previous order.

> [Citation omitted].  *Such motions are thus granted sparingly and properly viewed as an extraordinary remedy.*  [Multiple citations omitted].

*In re DEF Invs.*, 186 B.R. 671, 681 (Bankr. D. Minn. 1995) (emphasis supplied in part).  *See also*, *Dentsply Int'l., Inc. v. Kerr Mfg. Co., 42 F. Supp. 2d 385, 417 (D. Del. 1999)*("[motions for reargument] should be granted sparingly and should not be used to rehash arguments already briefed or allow a 'never-ending' polemic between the litigants and the Court").

49.     Given this underlying policy, reconsideration of a court's prior ruling mandates that the moving party "rely on one of three major grounds: '(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error [of law] or prevent manifest injustice.'"  *Home Health Corp.*, 268 B.R. at 76-77 (quoting *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3rd Cir. 1995)).

50.     The Processors do not even identify, let alone satisfy or present any evidence to meet, this standard for the extraordinary relief they seek.  They identify no "intervening change in controlling law (there is none), no new evidence (there is none), and no "clear error of law or manifest injustice" (there is none).[11]

51.     Rather, the Processors' improper advancement of new theories that should have been raised in the context of the Underlying Motions before the Letter Ruling and Processor Order were issued – without satisfying any of the "three major grounds" for reconsideration or clarification – is exactly what the Processors are doing through the Motion.  The Processors admit this.

---

[11] Whereas the Adversary Proceeding was filed after issuance of the Letter Ruling and Processor Order, withholding $700,000 for estimated *future* legal fees for an action to which the Processors are not parties and are not the target of the relief Pegasus seeks in that action, as set forth in the Pegasus Emergency Motion, should be denied outright.

52.     Throughout the Motion, the Processors emphasize that they "did not request the Court impose or award sanctions, including attorneys' fees, with respect to the motions that led to the issuance of the Orders" (Motion, ¶ 1(a)), yet now, in the form of a reconsideration and clarification request, raise arguments and legal theories they could have and should have raised then.  *See Federal Deposit Ins. Corp. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) (opining that motions under the rules which provide for the altering or amending of a judgment may not be used to argue a new legal theory which could have been advanced previously since they are not aimed at "initial consideration," but "reconsideration").

53.     But regardless of whether or not the Processors could have, should have, or did, seek recovery of their legal fees during the prior proceedings, the fact is that the Court obviously already considered the propriety of awarding such relief as to *both* parties and expressly ruled against it.  In this regard, the Court's ruling requires no clarification.  Its ruling is extremely clear:  *Neither* party is entitled to an award of attorneys' fees.

54.     Indeed, on at least two separate occasions in the Letter Ruling, finding that the Processors "violated the agreement between the parties" and did not "act in good faith in seeking to resolve this matter" (Letter Ruling, pp. 5, 6), the Court made its decision and underlying rationale in respect of an award of attorneys' fees as to both parties very clear:

> As for sanctions, I will not grant **either** party sanctions, attorneys fees or expenses.  The Processors violated the agreement between the parties in withholding more than 15% for the period of December 23, 2018 to January 1, 2019.  While Mr. Brown explained why more than 15% was withheld, I do not find the reasoning consistent with the Stipulated Order. . . . And, while the Stipulated Order does permit the Processors to net regular fees and charges provided under the MPA in accordance with its terms, section 19.1 of the MPA (upon which the Processors rely) does not fit into that category."

\* \* \* \*

> And, my observation is that neither party acted entirely in good faith in seeking to resolve this matter.  Further, it is evident that there was no cooperation between the parties (as a court expects there to be) in placing the dispute before me for decision.  While I do not always share my observations of the parties' conduct before the court, I do so here because it further informs my decision not to award *either* party requested sanctions, costs or attorneys fees.

*Id.*, p. 6 (emphasis added).[12]

55.    In sum, the circumstances do not satisfy any of the requirements under Rules 9023 or 9024 to warrant either reconsideration or clarification of the Court's ruling.  The Motion should be denied on this ground alone.[13]

### B.  The Processors Are Not Entitled to Maintain Any Reserve For Any Attorneys' Fees

*The Stipulated Order Does Not Authorize The Processors to Recover or Withhold From The Total Pegasus Reserve Any Attorneys' Fees in Any Amount*

56.    In the Motion, the Processors contend they are "entitled to recover attorneys' fees pursuant to the Stipulated Order and the plain contractual terms of the MPA."  Motion, ¶ 17.  First, the MPA is not binding on Pegasus, and even if it were, neither document authorizes the Processors unilateral decision to withhold either "$561,851.95 in fees incurred with respect to Pegasus through June, 2019" or $700,000 for "future fees to be incurred" with respect to the Adversary Proceeding.

57.    With respect to the MPA, Pegasus is not a party to it.  The MPA is strictly between the Debtors and the Processors.  Therefore, irrespective of what the MPA provides, it is not binding on Pegasus and cannot be used as a source for the Processors to apply any attorneys'

---

[12] While the Court held that Pegasus did not violate the letter of the Stipulated Order, Pegasus notes that the Court found that it violated the spirit of the agreement it negotiated.  *Id.*

[13] Moreover, it is worth noting that the Processors failed to attach to their motion "a proposed form of order specifying the exact relief to be granted" as required by the Local Rules.  *See* Local Rule 9013-1(f).

fees against the Total Pegasus Reserve, which is comprised solely of Pegasus's funds.  The
Processors' own witness already testified under penalty of perjury at the evidentiary hearings on
the Underlying Motions that the only document governing the relationship between Pegasus and
the Processors is the Stipulated Order.  *See, e.g.*, May 14 Transcript, 96:14-98:20.

58.    Recognizing this fact, the Processors now contend that "[t]he terms of the MPA
were explicitly incorporated into the Stipulated Order and are controlling" (Motion, ¶ 18) and
assert that Pegasus (rather than the Debtors) is the new "merchant" under the MPA.  This is
false.  The Processors rely on paragraph 3 to the Stipulated Order to support their contention that
the MPA was incorporated into the order and is binding on Pegasus.  That paragraph does not
incorporate the MPA's terms as the Processors suggest, or otherwise render the MPA binding on
Pegasus.

59.    Paragraph 3 to the Stipulated Order only references particular terms of the MPA
to allow application of the Total Pegasus Reserve for charges "on the merchant accounts related
to [credit and debit card] processing:"

> Priority shall be entitled to utilize the Total Pegasus Reserves to
> cover all losses ***on the merchant accounts related to processing*** at
> the Pegasus Locations from the closing of the Pegasus Sale
> (October 19, 2018) through December 31, 2018, including, but not
> limited to: (i) chargebacks, (ii) card association, Sponsor Bank, and
> regulatory fines, fees, penalties, and assessments, and (iii) all other
> fees and charges of all kinds ***related to processing for the***
> ***merchant accounts*** associated with the Pegasus Locations in
> accordance with the terms and conditions of the MPA.

Stipulated Order, ¶ 3 (emphasis added).

60.    The Processors fail to explain how any of the $1,261,851.95 in attorneys' fees
they continue to withhold falls within the scope of this provision.  The $561,851.95 attorneys'
fees they allegedly incurred in connection with the Underlying Motions are not losses "on the
merchant accounts" or losses incurred "processing for the merchant accounts."  And under no

scenario could they credibly assert that *potential future* attorneys' fees in any sum (much less at the staggering rate of $700,000) that may be incurred in connection with the Adversary Proceeding – to which they are not parties and which has nothing to do with their processing on merchant accounts – fit within this provision of the Stipulated Order.

61.    In fact, the Processors tacitly recognize the flaw in their position by their own description of the various categories of holdbacks they now impose.  In itemizing these categories in the Motion, the Processors identify a $56,893.78 holdback for "reject fees, chargeback damages, month end statements fees, and miscellaneous charges suffered ***as a result of Pegasus' processing***."  Fee Motion, ¶ 21 (emphasis added).[14]  In stark contrast, the Processors do not identify the two attorney fee holdbacks in any such matter.  Rather, the Processors broadly describe the holdback as "Attorneys' Fees Incurred to Date" ($561,851.95) and "Estimated Future Attorneys' Fees" ($700,000).

62.    Equally without merit is the Processors' new claim that Pegasus should be regarded "as the Merchant" under the MPA.  Motion, ¶ 6.  Pegasus was not and is not a party or signatory to the MPA.  Moreover, the Processors' current position is a complete about-face from the previous one they took in the very proceedings for which they now seek attorneys' fees.  As noted above, at the evidentiary hearings on the Underlying Motions, the Processors testified, under penalty of perjury, that Pegasus was *not* a "merchant" and they did not want Pegasus as a "merchant:"

---

[14] It bears noting that it is *these* types of charges to which the Court refers in footnote 7 to the Letter Ruling upon which the Processors so heavily rely to contend that the Court did not preclude recovery of attorneys' fees (despite the Court's express ruling that it "will not grant *either* party sanctions, attorneys fees or expenses") (emphasis added). This is clear from the fact that neither the Processors identified any charges at all in their Emergency Motion to which this footnote would apply, and none of the Processor charges identified in the Contempt Motion involve attorneys' fees.  In fact, as of the Letter Ruling, no attorneys' fees were "assessed by the Processors against the Reserve" at all to render this footnote applicable to attorneys' fees to justify their claim that the Court left open the Processors' entitlement to apply attorneys' fees against the Total Pegasus Reserve.

> Q      Okay.  See where it says, there shall be no new merchant application from Pegasus?
>
> A      Correct.
>
> Q      Was that a term that you negotiated?
>
> A      Yes.
>
> Q      Okay.  And so, you don't want Pegasus, I presume, as a merchant?
>
> A      Correct.
>
> Q      Okay.  And, to the best of your knowledge, was any [merchant] application ever submitted after this [stipulated] order was entered?
>
> A      No.

May 14 Transcript, 104:2-12.  *See also*, May 14 Transcript, 104:13-16 (testifying that "the entirety of the relationship . . . between PPS and Pegasus is based upon [the Stipulated O]rder").

63.      Even if any MPA provision relating to attorneys' fees somehow applied to Pegasus or Pegasus somehow became the "merchant" under the MPA, the Processors still would not be entitled to withhold any amount for *future fees* to the Total Pegasus Reserve (or recover any amount even if and when incurred).  The Processors cite paragraph 21.2 to the MPA to support withholding these funds.  But that section only requires the Debtors "to indemnify and hold Processor . . . harmless from and against all losses . . . in connection with . . . [a]ny claim . . with respect to this Agreement or a Transaction."  This encompasses neither: (a) future attorneys' fees that have not yet been incurred – indeed, until the Processor actually incur attorneys' fees there is none from which the Processors needs to be indemnified or held harmless; nor (b) the Adversary Proceeding, which is *not* a "claim with respect to th[e MPA] or a Transaction."

64.      In addition, even if the Stipulated Order and the MPA authorized application of

attorneys' fees to the Total Pegasus Reserve, the Processors still would not be permitted to retain any reserve for *future* attorneys' fees.  Paragraph 3 to the Stipulated Order is very clear that the Total Pegasus Reserve only applies "to cover all losses . . . ***from the closing of the Pegasus Sale (October 19, 2018) through December 31, 2018***."  Stipulated Order, ¶ 3 (emphasis added).  That same paragraph again limits its coverage to "the types of losses described in this paragraph ***arising during the time period referenced in this paragraph***."  *Id.* (emphasis added).  The future fees clearly do not fall within the scope of this provision, and the fees already incurred run through June 2019 with the Processors providing no breakdown to show how much was incurred and when it was incurred.

65.    In short, nothing in either the Stipulated Order or the Court's recent ruling permits the Processors to withhold any amounts on account of attorneys' fees.  The exact opposite is true:  The Stipulated Order required turnover, not retention, of the entirety of the almost $1.3 million the Processors are improperly withholding and should have returned no later than July 1, 2019, and the Letter Ruling expressly denies any award of attorneys' fees to the Processors.[15]

*The Court Already Explicitly Refused to Award The Processors Any Attorneys' Fees and Found that They "Violated The Agreement Between The Parties" And Failed to "Act in Good Faith"*

66.    The Court already considered and very clearly declined to award the Processors any attorneys' fees.  The Processors attempt to render this ruling as inapplicable to them, but the Letter Ruling confirms that the Court declined to award of attorneys' fees to *"either"* party after thoughtful consideration.

67.    With respect to the Processors, the Court found that they "violated the agreement

---

[15] Pegasus regards the Processors' unauthorized retention of funds on account of alleged attorneys' fees as contempt of the Court's Letter Ruling.  *See* Letter Ruling, p. 1 ("I am issuing this Letter Ruling in lieu of an opinion.  It is somewhat less formal in nature, ***but should be taken no less seriously***") (emphasis added).  Therefore, as discussed below, Pegasus seeks sanctions against the Processors.

23

between the parties," they failed to act "in good faith in seeking to resolve this matter," and

failed to "cooperat[e] . . . in placing the dispute before [the court]." Letter Ruling, pp. 5-6.

68.     It is true, as the Processors repeatedly point out, that the Court notes at one point

in the Letter Ruling that "[t]he validity of the charges assessed by the Processors against the

Reserve is not before [it] or relevant to the resolution of the two motions at issue." Letter

Ruling, p. 5, n.7. The "charges" to which the Court refers in that note, however, are *not*

attorneys' fees. *See*, *supra*, footnote 14.

### C. The Amount of Attorneys' Fees The Processors Seek is Highly Unreasonable

*The Amount of Fees Allegedly Incurred With Respect to The Underlying Motions is*
*Unsubstantiated And Grossly Excessive*

69.     The Processors seek to apply $561,851.95 in fees allegedly incurred in connection

with the Underlying Motions. Even if the Processors are permitted to recover attorneys' fees in

any sum notwithstanding the Court's ruling to the contrary and the other arguments advanced

above, the Processors' request should be denied.

70.     First, the Processors provide no support or other backup to substantiate this

enormous amount. They provide no time records, no breakdown of what services they

performed, no information regarding the dates on which the alleged services were rendered, and

nothing else to permit Pegasus or the Court to evaluate the validity or reasonableness of the fees

requested. Pegasus and this Court should have an opportunity to properly assess the relevance of

the services rendered and the reasonableness of the fees sought, and to ascertain whether the fees

were incurred during or outside the Processing Period.

71.     Second, $561,851.95 on two motions is objectively unreasonable. For one thing,

the Processors "over-lawyered" this matter. Indeed, at every hearing conducted, the Processors

had no less than *three* partners present, including two attorneys from Los Angeles and local

counsel.

72.     In addition, as the Court (the Honorable Laurie Selber Silverstein) often witnessed first-hand, the Processors themselves are the cause of the substantial amount of fees incurred. For example:

   a.     the Processors filed their Emergency Motion without any support, either from a declaration or documentary standpoint;

   b.     despite having been granted an expedited hearing on that motion, the Processors appeared with no witnesses to testify and completely unprepared to proceed (and, again, with three lawyers), such that the Court could not adjudicate the motion and resulting in the setting of another hearing; and

   c.     the Processors supplied incomplete or false accounting reports on several occasions, only further increasing fees unnecessarily.

*The Amount of Future Fees is Unsubstantiated And Grossly Excessive*

73.     Equally unsupportable and excessive is the $700,000 for future attorneys' fees the Processors seek to apply against Pegasus's funds.

74.     This amount relates solely to attorneys' fees the Processors speculate they may incur in connection with an adversary proceeding to which they are not even parties and which seeks no relief against them.  Seeking to justify this enormous holdback, the Processors take the ludicrous position that they need this reserve because "it is likely that Processors will be served with discovery, and possible that Processors will be brought in as cross-defendants."

75.     First, under no set of circumstances could the Processors reasonably incur $700,000 in connection with litigation to which they are not a party.  Potentially responding to discovery cannot possibly result in $700,000 in attorneys' fees.  Second, the Processors supply no support for their conjecture that it is "possible" they "will be brought in as cross-defendants."

Third, the Processors fail to provide any breakdown or other evidence or support to establish how they arrived at a $700,000 figure. Fourth, there is no legal or factual basis on which Processors are entitled to a reserve for future attorneys' fees. Fifth, as discussed above, any fees they may incur in connection with the Adversary Proceeding falls far outside the Processing Period (October 19, 2018, and December 31, 2018) and, in turn, cannot be recovered even under the Processors' faulty interpretation of the Stipulated Order which limits recovery to charges incurred only during that period. In summary, nothing supports the position of the Processors which is indicative of their continuing effort to harm Pegasus and deprive it of the use of its own money.

## COUNTER-MOTION FOR CONTEMPT FOR VIOLATING THE LETTER RULING AND AWARD SANCTIONS TO PEGASUS[16]

### A. This Court Has Authority to Enforce The Letter Ruling And Impose Sanctions

76.     As the United States Supreme Court explained, a bankruptcy court has the authority to enforce its own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). *See also*, *In re Continental Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders").

77.     To that end, the Court may issue orders to enforce compliance with prior orders. *See Continental*, 236 B.R. at 331 (imposing sanctions for violation of bankruptcy court's confirmation order). This includes the power to issue civil contempt orders. *See, e.g.*, *In re Kennedy*, 80 B.R. 673 (Bankr. D. Del. 1987) (finding party in contempt of court order and awarding attorneys' fees incurred in bringing motion for contempt). *See also*, *In re Swanson*,

---

[16] Pegasus respectfully submits this counter-motion for sanctions against the Processors and, at this time and based upon the Court's rulings, requests that it be set for hearing at a time and date to be determined with an accompanying objection deadline.

207 B.R. 76, 79 (Bankr. D.N.J. 1997) ("Pursuant to Bankruptcy Code § 105, a bankruptcy court may award damages for civil contempt"); *In re Baker*, 195 B.R. 309, 316 (Bankr. D.N.J. 1996) ("The bankruptcy court has the power to sanction parties for contempt") (citations omitted).  An order finding civil contempt may be appropriate to "enforce compliance with a court order and to compensate a party damaged by a violation of that order."  *Swanson*, 207 B.R. at 79 (citations omitted).

78.    This Court is "afforded broad discretion to fashion a sanction that will achieve full remedial relief."  *John T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 554 (3rd Cir. 2003) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-94 (1949)).  *See also*, *In re Miller*, 2007 Bankr. LEXIS 4144, *11-12 (Bankr. E.D. Penn. Dec. 11, 2007) ("the law affords courts considerable discretion in fashioning an appropriate sanctions for contempt") (citing *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3rd Cir. 1994)).  "Often this discretion involves ordering payment for the costs of past non-compliance[.]"  *Id.*  In addition, "'[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'"  *Fellheimer, Eichen & Braverman v. Charter Technologies*, 57 F.3d 1215, 1224 (3rd Cir. 1995) (quoting *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45 (1991)).

79.    Pegasus need only show the existence of a clear and enforceable order, the Processors' notice of and noncompliance with that order.  *See In re Keene*, 110 B.R. 477, 482-83 (S.D. Cal. 1990); *Baker*, 195 B.R. at 316-19.

**B.  The Processors Should be Held in Contempt For Violating The Stipulated Order and the Court's Letter Ruling And Award Sanctions to Pegasus in The Form of Attorneys' Fees And Costs**

80.    All criteria to warrant a contempt finding and sanctions are met here.

81.    First, no legitimate dispute exists that the Stipulated Order and the Letter Ruling

are enforceable mandates of which the Processors were aware.[17]  The Stipulated Order

commanded return of the reserves on July 1, 2019.  The Letter Ruling unequivocally denied

attorneys' fees as to both parties.  Even if the Processors believe they are entitled to seek or

recover attorneys' fees under the Stipulated Order, the MPA, or other theory, nothing permitted

them to take matters into their own hands (as they have done before) by unilaterally deciding to

withhold Pegasus's funds without authority; especially not in the face of the Letter Ruling, the

Stipulated Order, and the June 30 expiration date for the Total Pegasus Reserve.  Second, for the

same reasons, it is clear the Processors did not comply with the Letter Ruling (or the Stipulated

Order).  Finally, the Processors obviously had notice of the Court's ruling.

82.     As discussed above, the Processors' most recent violation has caused and

continues to cause Pegasus significant harm, including severe interference with Pegasus's

obligations under its loan agreement with its senior lender, cash flow, and overall business

operations, and causing Pegasus to incur even more attorneys' fees litigating this most recent

round of motions.

83.     For these reasons, the Court should hold the Processors in contempt, compel the

Processors' immediate release of the $1,261,851.95 of the Total Pegasus Reserve they continue

to hold, and award Pegasus all of its attorney's fees and costs incurred in connection with the

Motion and its recent Emergency Motion, award additional compensable damages to be shown,

and grant other sanctions as may be appropriate.[18]

---

[17] That the Letter Ruling was in the form of a letter is of no consequence and was followed by an Order referencing and incorporating the Letter Ruling.  *See* Letter Ruling, p. 1 ("I am issuing this Letter Ruling in lieu of an opinion.  It is somewhat less form in nature, but should be taken no less seriously."); *see also* Docket No. 1535.

[18] Pegasus shall submit a supplemental declaration quantifying the amount of attorneys' fees and costs incurred upon the Court's approval of these sanctions.  Pegasus reserves the right to identify, quantify, and seek from the Processors other damages incurred as a result of the Processors' failure to release all the required funds by July 1, 2019 (including, but not necessarily limited to, any additional interest, fees, or charges assessed against Pegasus by its lender).

## CONCLUSION

84.     Based on the foregoing, this Court should: (a) deny the Motion; (b) compel the

Processors' to forthwith release to Pegasus no less than $1,261,851.95 of the Total Pegasus

Reserve; (c) hold the Processors in contempt and award Pegasus attorneys' fees and costs

incurred in connection with the Motion and its recent Emergency Motion, award Pegasus

additional compensable damages caused by violation of the Stipulated Order and the Letter

Ruling, and grant other sanctions as may be appropriate; and (d) provide such other additional

relief in favor of Pegasus.


Dated: July 12, 2019                         Respectfully submitted,
        Wilmington, Delaware

                                             */s/ Aaron H. Stulman*
                                             Christopher M. Samis (DE No. 4909)
                                             Aaron H. Stulman (DE No. 5807)
                                             POTTER ANDERSON & CORROON LLP
                                             1313 N. Market Street, 6th Floor
                                             Wilmington, Delaware 19801-6108
                                             Telephone:  (302) 984-6000
                                             Facsimile:  (302) 658-1192
                                             Email:      csamis@potteranderson.com
                                                         astulman@potteranderson.com

                                             *-and-*

                                             Alan G. Tippie (CA No. 89587)
                                             Asa S. Hami (CA No. 210728)
                                             **SULMEYER**KUPETZ, A.P.C.
                                             333 South Grand Avenue, Suite 3400
                                             Los Angeles, CA 90071-1406
                                             Telephone:  (213) 626-2311
                                             Facsimile:  (213) 629-4520
                                             Email:      atippie@sulmeyerlaw.com
                                                         ahami@sulmeyerlaw.com

                                             *Counsel for Pegasus Trucking, LLC*